## LYDA M. HOLMES, Appellant, v. KANSAS CITY and MICHAEL ROSS.

### Division One, February 26, 1908.

1. **CONDEMNATION: Estate By Entirety: Right of Wife.**
Where land belongs to the husband and wife as tenants by the entirety she has an interest in the property that must be paid for prior to its seizure and use for a public purpose. Service upon the husband alone in the condemnation proceeding and his appearance thereto and the payment of the damages assessed to him, do not make her a party, nor bind her interest, nor bar her to maintain injunction to protect the property from seizure.

2. ————: **Damages: Deposit in Court: Mortgagee: Interpleader.** The constitutional requirement that the compensation for property taken for a public use "must be paid to the owner or into court for his use" before the city can take possession, is not met by a conditional deposit of the money, nor by a deposit for the use of parties other than the owner, nor by paying it into court for the special purpose of having the court determine which of two persons is entitled thereto.

3. ————: ————: ————: **Interplea: Wife Not a Party.**
Where the city, in a proceeding to condemn for a boulevard, property which belonged to the husband and his wife as tenants by the entirety, in the condemnation suit proceeded to assess the amount of damage, and then in a separate suit by interpleader, to which the wife was not summoned or made a party, brought the money into court and asked that the court determine whether he or a mortgage company or both were entitled to the fund, and it adjudges that the husband is entitled to the whole of it, no money was paid into court for her, or for her benefit, and the city has no right to seize the property, or to disturb her possession, *and* injunction is her proper remedy.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

REVERSED AND REMANDED (*with directions*).

*Johnson & Lucas* for appellant.

(1) No compensation having been paid to Mrs. Holmes, or into court for her, as required by both the

Constitution and the city charter, her proprietary interest in her property cannot lawfully be disturbed. No matter what may be said as to the necessity of Mrs. Holmes being made a party to the condemnation proceedings by name or of the necessity of personal service of notice upon her, the absolute necessity must be conceded of compensation for her property being paid to her, or into court for her, before her proprietary rights can be disturbed. Const. 1875, art. 2, sec. 21; city charter, art. 10, sec. 28; Troyer v. Wood, 96 Mo. 478; Railroad v. Fowler, 113 Mo. 473. (2) The payment of money into court, in the interpleader suit, did not affect Mrs. Holmes' property rights. Hilton v. St. Louis, 99 Mo. 199; Cloud v. Pierce City, 86 Mo. 366; Roselle v. Bank, 119 Mo. 84; Black on Judg., 223. (3) Mrs. Holmes is not estopped to assert her property rights. Tourville v. Railroad, 61 Mo. App. 533; Bales v. Perry, 51 Mo. 453; Throckmorton v. Pence, 121 Mo. 59; Eitelgeorge v. Bldg. Assn., 69 Mo. 52. (4) A bill for injunction to prevent destruction of the inheritance may be maintained by a married woman, who is a tenant by the entirety. Hall v. Stephens, 65 Mo. 674; Bains v. Bullock, 129 Mo. 120; Johnston v. Johnston, 173 Mo. 114; 1 Wash. Real Prop., p. 315; 2 Kent's Com., p. 131; Railroad v. Fowler, 113 Mo. 473; Carpenter v. Grisham, 59 Mo. 251; McPike v. West, 71 Mo. 199; Turner v. Stewart, 78 Mo. 480; McElroy v. Kansas City, 21 Fed. 257; Grosser v. City, 60 Hun 379; sec. 4339, R. S. 1899; Atkison v. Henry, 80 Mo. 153; Silvey v. Sumner, 61 Mo. 255; Bartlette v. O'Donoghue, 72 Mo. 565. (5) It is necessary, under the city charter, that all known owners of property sought to be taken for park and boulevard purposes should be made parties to the condemnation proceedings by name, in order to acquire their interest in the property. City charter, art. 10, secs. 10, 11, 13, 28; Longwell v.

Kansas City, 69 Mo. App. 177; Bales v. Perry, 51 Mo. 449; Throckmorton v. Pence, 121 Mo. 59.

*Edwin C. Meservey* and *Wm. A. Knotts* for respondents.

(1) Legal publication was had as to the owners of the land taken and in this manner service was obtained upon Mrs. Lyda M. Holmes as to any interest she may have had in tract No. 79. Charter, art. 10, sec. 11; Kansas City v. Duncan, 135 Mo. 580; Kansas City v. Ward, 130 Mo. 172; Eyssell v. St. Louis, 168 Mo. 616; Kansas City v. Mastin, 169 Mo. 89. (2) Plaintiff knew of the condemnation suit and its purposes, and, failing to protect her interests, is bound by the judgment and decree in the condemnation suit. Robbins v. Chicago, 4 Wall. 672, affirming 2 Black (U. S.) 418; Albert v. Hamilton, 76 Md. 311; Riley v. Bank, 81 Md. 27; Andenreid v. Woodward, 4 Fed. 173; Tel. Co. v. Tel. Co., 27 Fed. 663; Williamson v. Snelly, 92 Md. 9; Thomsen v. McCormick, 136 Ill. 135. (3) The omission of the name of the plaintiff, from the map or plat filed in the condemnation proceedings for Admiral boulevard, does not affect the validity of the proceedings. Charter, sec. 10, art. 10; Kansas City v. Smart, 128 Mo. 289. (4) Kansas City deposited with the clerk of the circuit court of Jackson county the amount allowed for tract No. 79 in the condemnation proceeding for the use and benefit of whomever may be entitled thereto according to law. Charter, art. 10, sec. 28. (5) Upon payment of said fund into the circuit court for tract No. 79, the court vested the title to said property in Kansas City by a final judgment unappealed from, and subsequent acts of the court in disbursing said money will not divest title acquired by Kansas City.

GRAVES, J.—In 1886 the plaintiff and her husband, Daniel B. Holmes, acquired title to a tract or

parcel of land or lot in Kansas City, Missouri, the particular description of which will serve no good purpose here.  The deed to them and which was of record, is such as created an estate by the entirety, and from that time on they continued as tenants by the entirety.  On this tract or parcel of land was a brick dwelling house and other improvements.  In February, 1901, the defendant, the city of Kansas City, being desirous of opening up what is called Admiral Boulevard, and for that purpose, to acquire a portion of this and other tracts of land in said city, after passing in October, 1900, the necessary ordinance, instituted its condemnation proceeding in the circuit court of Jackson county, under the charter provision of said city relative thereto.  The said city filed a certified copy of said ordinance, together with a plat of the property to be taken or damaged by the city in constructing this boulevard.  This plat gave the names of the owners of the property, and as to this tract or parcel, which is known throughout this proceeding as tract 79, the names of Daniel B. Holmes and the Jarvis-Conklin Mortgage Trust Company and Samuel M. Jarvis, Trustee, were named as owners.  The name of Lyda M. Holmes did not appear upon this plat.  In that proceeding the court record, omitting therefrom the ordinance mentioned therein, is as follows:

"In the matter of the condemnation of land for the opening and establishing  a boulevard in the  North Park District in Kansas City, Missouri, under ordinance of Kansas City, Missouri, No. 15,550, entitled, 'An ordinance to open and establish a boulevard along Seventh street, Sixth street and Other Lands in the North Park District in Kansas City, Jackson county, Missouri,' approved on October 9th, A. D. 1900.

"Now, on this, the sixteenth day of February, A. D. 1901, in this, the circuit court of Jackson county, Missouri, at Kansas City, Division No. 2, comes Kan-

sas City, Missouri, by its counsellor, R. B. Middlebrook, and by Delbert J. Haff, attorney and counsellor of the Board of Park Commissioners, has caused to be filed in this court a certified copy of an ordinance of said city, No. 15,550, approved by the mayor of said city on the 9th day of October, A. D. 1900, and entitled, 'An ordinance to Open and Establish a Boulevard along Seventh Street, Sixth Street and Other Lands in the North Park District in Kansas City, Jackson county, Missouri,' and has caused also to be filed a statement by plat prepared by the city engineer of said city, as provided by law, containing a correct description of the several lots or parcels of private property to be taken or damaged, and containing also the names of the owners, so far as known, of such lots or parcels of land or any estate or interest therein, who were such at the time of taking effect of said ordinance, and the court being fully advised in the premises doth make the following order herein, to-wit:

"To all persons whom it may concern.

"Whereas, a certified copy of ordinance of Kansas City, Missouri, No. 15,550, and entitled, 'An Ordinance to Open and Establish a Boulevard along Seventh Street, Sixth street and Other Lands in the North Park District in Kansas City, Jackson County, Missouri,' has been by the Board of Park Commissioners of said city caused to be filed in the circuit court of Jackson county, Missouri, at Kansas City, the general object and nature of which ordinance is to open and establish a boulevard in the North Park District of Kansas City, Missouri, fully set out and described in said ordinance, and to take and damage certain private property for said purposes, describing the private property so to be taken or damaged, and prescribing the limits within which private property shall be deemed benefited by the proposed improvements and be assessed and charged to pay compensation therefor,

which said ordinance is specifically as follows, to-wit:
. . . .

"And said Board of Park Commissioners had caused to be filed also a statement by plat prepared by the city engineer of said city as provided by law, containing a correct description of the several lots or parcels of private property to be taken or damaged, and containing also the names of the owners, so far as known, of such lots or parcels of land, or of any estate or interest therein, who were such at the time of taking effect of said ordinance:

"Now, therefore, all and each of you who may be concerned in said proceedings are hereby notified that the twenty-third day of March, A. D. 1901, is the day, and the court room of Division No. 2 of the circuit court of Jackson county, Missouri, at Kansas City, at the county courthouse in Kansas City, Missouri, is the place hereby appointed and fixed for the empanneling of the jury to ascertain the compensation for the property to be taken or damaged under said ordinance, and the amount of benefits, if any, to be assessed against the property within the benefit district, and to make assessments to pay for the property to be taken and damaged, and for the ascertainment of the compensation to be paid for the property to be taken or damaged, and the amount of the benefits to be assessed to pay therefor.

"And the court further orders that the parties owning or having an interest in the real estate proposed to be taken or damaged by said ordinance be served within said city with a copy of this order, either by delivering to each of said owners or parties interested at any time before the said day fixed herein for the hearing as aforesaid, a copy of this order, or by leaving such copy at the usual place of abode with some member of their respective families over the age of fifteen years, and in case of corporations, by delivering

such copy to the president, secretary or some managing officer, or to any agent of such corporations, in charge of any office or place of business of such corporations, as by the charter of said city provided.

"And the court further orders that this order be published in each issue of the Kansas City Mail, the newspaper doing the city printing for Kansas City, Missouri, for four successive weeks, the last insertion to be not more than one week prior to the day fixed for said hearing."

The plat mentioned in said order and filed with the certified copy of the ordinance, as above stated, had thereon the following certificate:

"I hereby certify that this statement by map contains a correct description of the several lots or parcels of private property to be taken or damaged as provided by ordinance of the mayor and common council of Kansas City, Missouri, No. 15,550, approved October 9th, A. D. 1900, and contains also the names of the owners so far as known, of such lots or parcels of lands to be taken or damaged, or of any estate or interest therein, who were such at the date of the taking effect of said ordinance providing for the taking and damaging of said private property.

"ROBERT W. WADDELL,
"City Engineer.

"Office of Board of Park Commissioners,
Kansas City, Missouri.

"I hereby certify that the annexed map was delivered by the city engineer of Kansas City, Missouri, to the Board of Park Commissioners of said city this 7th of January, 1901.

"Witness my hand and the seal of said board the day and date last aforesaid.

"GEO. E. KESSLER, Secretary.

(Seal of Board of Park Commissioners of Kansas City, Mo.)

"Filed Feb. 16, 1901.

"H. M. Stonestreet, Clerk.
"D. H. McClanahan, D. C."

The return made by the officer serving this order showed service upon Daniel B. Holmes, but not upon Lyda M. Holmes. It also showed no service as to the Trust Company or its trustee, but as to them a *non est* was made.

This condemnation proceeding was proceeding No. 2619 in the circuit court of Jackson county. Daniel B. Holmes filed a claim for damages in this proceeding, claiming ownership of the property.

A condemnation jury was appointed, and on October 21st, returned their verdict and assessment of damages, which as to tract No. 79 was $2,737.50.

January 18, 1902, the court entered judgment on the verdict returned by said jury, approving said report and verdict in every particular. November 29, 1902, the court entered judgment, finding that all the tracts and parcels of land had been paid for and decreed title in Kansas City for the public use aforesaid.

On November 1, 1902, Kansas City, as plaintiff, filed another suit, being case No. 9895, which was in the nature of a bill of interpleader, against Edward R. Heald, Daniel B. Holmes, Samuel M. Jarvis, the Jarvis-Conklin Mortgage Trust Company, and a number of other parties, but Lyda M. Holmes was not a party to this proceeding. In this case, the city sought to have all parties brought into court and have them interplead and establish their respective claims to the several sums of damages awarded in the condemnation suit, first above described.

On November 17, the city for the first time paid into court the sum of $2,737.50, awarded as damages in the condemnation suit, and this payment was made

in the interpleader suit, case No. 9895, as appears by
the clerk's memoranda on the files in case No. 2619,
which memoranda is in this language: "Nov. 17, 1902.
Rec'd of city in case 9895, the sum of $2,737.50, on tract
79." Tract No. 79 was also known to the pleadings
in the interpleader suit.

In this interpleader suit, Lyda M. Holmes was not
served and did nothing therein. Daniel B. Holmes files
his interplea claiming the whole fund thus paid into
court. The mortgage company and its trustee filed its
answer disclaiming any interest in the said fund of
$2,737.50, thus paid in with the bill of interpleader.
The court thereupon decreed that said Daniel B.
Holmes was entitled to the fund and the same was paid
to him March 30, 1903. Shortly thereafter, Michael
Ross, under a contract of purchase from the city, en-
tered said premises and began to remove the house
therefrom which he claimed to have purchased from
the city, and thereupon Lyda M. Holmes, the plaintiff
herein, instituted the case at bar, which is an injunc-
tion suit, wherein she alleges her interest in the prop-
erty hereinabove stated; that she was and had been
for some time in possession thereof, renting the same;
that she had never been paid for her interest in said
property, and asks relief as follows:

"Wherefore, plaintiff prays the court that the de-
fendants and each of them, their agents, attorneys,
representatives, servants and employees be forever
perpetually enjoined and restrained from tearing down
or removing said brick dwelling house, or any part
thereof, from said tract of land; from in any manner
whatever interfering with or disturbing the earth or
soil of said tract of land, or any of the improvements
thereon, and from making any public use whatever of
said tract of land as a boulevard or otherwise, and for
such other and further relief as the plaintiff in equity

and good conscience may be entitled to, and for costs of suit,'' etc., etc.

Defendant, by answer, pleads the condemnation proceeding and the interpleader proceeding aforesaid; the claim of the money made by Daniel B. Holmes; the judgments in each of said proceedings; the payment of the money to Daniel B. Holmes, and further avers that Daniel B. Holmes was personally served in the condemnation proceeding and that his wife was told by him of such proceeding and the nature thereof. Upon the trial of this cause it was admitted, subject to relevancy and competency, as follows:

"It is admitted that prior to the trial of the case in condemnation and during the pendency of that action, plaintiff, Mrs. Holmes, was informed by her husband of the fact that he had been served with a copy of the order of the court of the pendency of the action for the taking of this property among other property for the purpose of the establishing of a boulevard.''

By its judgment upon the trial of the cause, the court dismissed plaintiff's bill and entered judgment against her for costs. Motion for new trial was filed, but overruled, and plaintiff appealed. The respective contentions of the parties will be noticed in the course of the opinion.

The contentions in this case may be summarized thus: Plaintiff claims that she had an interest in tract No. 79, and that it cannot be taken for the public use indicated without just compensation. She further claims that she has never been compensated in any way, or in either of the two proceedings mentioned above. She claims that, inasmuch as she was a known owner residing in Kansas City, and the court having made an order for personal services as to such owners in the condemnation proceeding, and no such service was had upon her, she was not a party to that proceeding, and in no way bound thereby. She further

contends, that even if she was, in contemplation of law, a party to the condemnation proceeding, yet as no payment of damages was made to her, and no money deposited in court in that proceeding for her as the assessed damages on tract 79, she is in no way bound by the decree in that case, and would not be bound thereby by the payment into court, in another proceeding to which she was not a party, of the sum assessed as damages in the condemnation proceeding. Her contention is thus double in character, and proceeding in reverse order, as the more natural course, where the determination of the latter contention may determine the case, we will take up the latter contention first.

I. That Mrs. Holmes has not been compensated for her interest in this property stands out in bold relief on the record before us. In fact it is not contended that she has been paid a cent. Nor do we take it that it is seriously contended that she had or has no such interest as entitles her to compensation under the constitutional provision requiring compensation for private property when taken for public use. If such were contended, the contention would not be well founded. The city's contention is that the money was paid into court for her benefit, and that question we discuss later. That Mrs. Holmes had an interest such as to bring her within the constitutional guarantee, we think is well settled. The deed to the property made Mr. and Mrs. Holmes tenants by the entirety. The grantees are thus named in the deed conveying the title to them: "And Daniel B. Holmes and Lyda M. Holmes, his wife, of the county of Jackson, State of Missouri, parties of the second part;" and the granting clause is, "Do, by these presents, grant, bargain and sell, convey and confirm, unto the said parties of the second part, their heirs and assigns," etc. So that there is no question that there was created an estate by the entirety. Such an estate gave to Mrs. Holmes an interest

in the property which must be paid for prior to its seizure and use for a public purpose.

. The case of Grosser v. City of Rochester, 60 Hun l. c. 380, is exactly in point. This was an injunction by the wife to enjoin the city from constructing a sewer across property held by herself and husband as tenants by the entirety. The husband had been made a party to the condemnation proceeding, but the wife had not. The money had been paid into court in the condemnation proceeding for the benefit of the husband. The city let a contract for the construction of the sewer and the work was progressing when the suit was brought. Both the city and the contractor were made parties defendant. In that case, the court said:

"We agree with the learned referee, and for the reasons well stated by him in his opinion, that service of notice upon the husband and his appearance in the proceeding did not make the wife a party thereto nor bind her interest in the property, and, therefore, that as against her the city acquired no right in the premises; but we cannot agree with him that she had no rights in the premises which were liable to be injuriously affected by the building of the sewer under the proceedings actually had.

"It is true that under the doctrine of Bertles v. Nunan, during the joint lives of the husband and wife the husband has the right to the exclusive benefit, use, possession and control of the land and may take all the profits thereof; and may mortgage or convey an estate to continue during the joint lives; but he may not make any disposition of the land that would prejudice the right of the wife in case she should survive him. [Bertles v. Nunan, 92 N. Y. 156; Coleman v. Bresnaham, 54 Hun 619.] The husband, therefore, might have granted the right of way during the joint lives, with provisions against a permanent injury to the freehold; and whatever he might grant, the city might acquire

from him by condemnation proceedings to which he alone was made a party. But this is not what has been done in this case. Here the city has proceeded against the husband as the sole owner of the title to acquire a perpetual easement in the land, which includes the right for all time to maintain the sewer and to enter upon the property to repair and renew it. All these rights the city has already acquired on the face of the record, and its counsel is contending here that it has in fact acquired them against the plaintiff by the proceeding against her husband. The learned referee, while holding the contrary, suggests, in substance, that it will be time for her to contest the claim of the city when her title shall become absolute by survivorship. But suppose the sewer is built and put to its proper use of draining a large and populous section of the city, and then her husband dies. How shall she proceed to assert and enforce her rights? If the city decline to recognize them, shall she tear up or cut off the sewer, or, as the referee suggests, restrain the city from its use; and in either case with how much more of inconvenience and expense than if she had taken her remedy when those rights were only threatened with invasion. Or suppose the husband dies when the work is only fairly under way, with her lot divided by an excavation and the earth or rock which has been thrown out of it. Her title has now become sole and absolute and the city has no right to proceed a step further with the work. But they have paid for the damage so far done in the award made by the husband, and if the plaintiff stop the work where it is, she may restore the lot to its proper condition at her own expense.

"It seems very clear that the plaintiff has rights by virtue of her joint tenancy which are liable to be seriously impaired by the action which the defendants are about to take.

"We think the learned referee erred in the latter

of his conclusions above mentioned, and that the plaintiff, upon the facts appearing by the record, was entitled to the restraining process of the court to prevent the prosecution of the work on the plaintiff's property until they have acquired the right as against her.''

The action by the city in the case at bar appropriates a part of the tract of land and damages the remainder, as found by the verdict and judgment. The inheritance itself is stricken at, and in part destroyed and in another part damaged. It has always been held that in a case wherein the inheritance itself is involved the wife must join in the action. In 2 Wash. on Real Property (3 Ed.), p. 305, it is put thus:

''They are not properly joint-tenants of such lands, since, though there is a right of survivorship, neither can convey so as to defeat this right in the other. Each takes an entirety of the estate. . . . . As the husband is entitled to the entire rents of the wife's lands, except as hereinbefore stated, it follows that he alone can sue for an injury to the estate which affects these. But if the injury affect the inheritance, the action must be in their joint names, and it will survive to her if she outlives him.''

This joinder of parties is obviated by our statute pertaining to married women. [Bains v. Bullock, 129 Mo. 117.] But the point we are now making is that the wife had a substantial and recognized interest in the inheritance, and could maintain an action when injury was done thereto.

Such is her interest that she, without joining her husband, can sue for the possession thereof as against all persons except the husband. [Bains v. Bullock, supra.] In that case, we said:

''But it is urged that, as the estate is invested in the husband and wife by the entirety, the statute giving the wife a right of action does not authorize her to sue alone for the violation of the joint rights of herself and

husband. But an estate of this character is not a joint or common estate. The conveyance vests in the husband and wife each the entire estate, not a joint interest. Each is entitled to possession as against every person except the other. It is true the estate is entire and cannot, by partition or otherwise, be segregated while the marital relation exists, so as to give each grantee either an undivided interest in the land, or a right in severalty to a particular part of it. [Russell v. Russell, 122 Mo. 235.] But it is also true that the grant vests in each grantee the entire estate. The statute abolishes the legal unity between husband and wife, which gave rise to the estates by the entirety, but the estate itself has not been abolished. [Sec. 8844, R. S. 1899.]

"The marital control by the husband over the real estate of the wife is removed and she is given the power to sue 'at law or in equity with or without her husband being joined with her as a party.' The right to sue in her own name seems to be unlimited. That she has the right to sue in ejectment to recover possession of her land has been decided. [Arnold v. Willis, 128 Mo. 145.]

"Under the deeds to herself and husband, then, plaintiff holds the entire estate in the lands claimed. Defendants do not claim under the husband, nor does it appear that the possessory rights of the husband will, in any manner, be affected by the suit of the wife or any judgment she may recover. Plaintiff, therefore, as against defendants, is entitled to the possession and has a right of action therefor."

And such is her interest that "divorce of the wife from the husband results in vesting in the wife her moiety." [21 Cyc. 1201, and cases cited.] We have held in this State that the divorce of the wife from the husband gave her absolute title to her moiety, and that an action in partition would lie. [Russell v. Russell, 122 Mo. 235.]

So that we have no hesitancy in saying that Mrs. Holmes had such an interest in the property as demanded at the hands of the city just compensation before the property or any part thereof could be taken for a public purpose. That she received no such compensation is an admitted fact. Was there such compensation deposited in court for her benefit, and is she thereby debarred of this action? To this question we proceed next.

II. Under this point we assume, without conceding or discussing the question, that Mrs. Holmes was by the general order of publication, although not personally served, made a party to the condemnation proceeding. Conceding for the sake of the argument that she was, have her rights been affected thereby? We think not, and for several reasons. The constitutional provision pertaining to the subject reads thus:

"Private property shall not be taken or damaged for public use without just compensation, and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein vested."

The city charter, art. 10, sec. 28, has this provision: "The city shall not be entitled to the possession of any lot or parcel of property taken under the provisions of this article until full payment of the compensation therefor, as determined, be made or paid into court for the use of the persons in whose favor such judgment may have been rendered, or who may be lawfully entitled to the same."

We take it that this charter provision is not broader than the Constitution. It could not be and yet stand as valid. It must be borne in mind that not a dollar of the damages allowed in the condemnation proceeding was ever paid into court in that case. The city evidently had in mind (a very natural inference when the names of the owners of tract No. 79 as appeared from the plat filed with and made a part of the pleadings in

the condemnation case are remembered) that there was a question as to whether this allowance should be paid to Daniel B. Holmes or the Jarvis-Conklin Mortgage Trust Company. Evidently in doubt upon that question, the city did not pay into court the amount of the allowance, $2,737.50. The city in effect abandons that case, and files suit No. 9895, a bill of interpleader, and in this suit, for the first time, brings the money into court, and asks that the said Daniel B. Holmes and Jarvis-Conklin Mortgage Trust Company, be required to interplead and show their respective rights to that fund. This fund thus deposited in court, was one deposited under the terms of this suit, as a fund belonging either to Daniel B. Holmes or the Mortgage Trust Company, or both, but not as a fund for the benefit of Mrs. Holmes for she was not named in the proceeding or made a party thereto. Had the city been paying into court a fund, in which it recognized that Mrs. Holmes had an interest, by its bill of interpleader, it would have so stated, and Mrs. Holmes would have been made a party defendant therein, and required to set forth her claim to the fund. This suit was a separate action, and one in which Mrs. Holmes could not have been brought into court except by personal service, she being a resident of Jackson county. Mr. Holmes had a substantial interest in the property taken and the city thought that the Mortgage Trust Company might have a substantial interest, so that it brings into court $2,737.50, and by its bill of interpleader in effect says, "I have and hold this sum of money, which either belongs to Daniel B. Holmes, or the Jarvis-Conklin Mortgage Trust Company. This money, with this bill I bring into court, and ask the court to require these parties to settle their respective claims thereto." Such a payment into court is not a payment into court of any money for the benefit or use of Mrs. Holmes. On the other hand it is made

by the bill of interpleader and the parties thereto a specific payment into court for the use and benefit of Daniel B. Holmes or the Mortgage Trust Company or both. Had the money been paid into court in the condemnation case, a different question might have been presented, not necessary here to discuss.

In this case, the city by its act of paying the money on a bill of interpleader, and in that bill naming the parties who might be entitled thereto, but leaving out and excluding Mrs. Holmes from the list, has made a deposit which was not for her use or benefit, but for the use or benefit of others, specifically named in the bill. By failing to mention Mrs. Holmes in its bill of interpleader, the city negatives the idea that any money, at any time, has ever been paid into court for the use of Mrs. Holmes.

In Railroad v. Fowler, 113 Mo. l. c. 473, it is said: "Section 21 of article 2 of the Constitution is emphatic. . . . The compensation . . . must be paid to the owner or into court for him, before the condemning company can take possession. To use the language of the Constitution, 'and until the same [the compensation] shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. This constitutional provision contemplates that the compensation shall be paid before the property can be disturbed. It is not satisfied with a mere deposit by way of security, not to be withdrawn until the final disposition of the case. It says nothing about a deposit by way of security. If the owner will not accept the money, it can be paid into court for him, not there to remain as a security for the final award, but for his immediate use. He has the right to withdraw and use the money. . . . The right to have the amount of the award placed at the disposal of the property-owner before his property is disturbed is a constitutional right, of which

he cannot be deprived by any act of the Legislature.''

And we will add here that the constitutional mandate is not only not met by a conditional deposit of money, but it is likewise not met by the deposit in court of the damages assessed for the use of parties other than the owner. Nor is it met by paying into court for the special purpose of having the court determine which of two parties is entitled thereto, leaving out of the determination the owner or one of the owners, as in this case.

From this point of view it therefore appears that no money has been paid Mrs. Holmes, and no deposit made for her use or benefit. Under such circumstances the city has no right to harm her inheritance in the property in dispute, and in such case, injunction is the proper remedy. These conclusions obviate the discussion of the other interesting question, as to whether or not she was a party to and bound by the condemnation proceeding. In our judgment when the Constitution says that the owner must be paid, or the money deposited into court for the owner, the term ''into court'' means in the condemnation proceedings. But it is not necessary to go that far in this case, because the city has qualified its payment into court, by naming the parties in the bill of interpleader, for whose use and benefit the money was brought into court, and Mrs. Holmes was not one of these. Leaving her name out of the bill of interpleader negatives the idea that the payment therewith tendered was for her benefit.

It therefore follows that this cause should be reversed and remanded with directions to the trial court to enter judgment permanently enjoining defendants, as by the plaintiff prayed, and it is accordingly so ordered.

All concur.

## ON MOTION TO MODIFY JUDGMENT.

GRAVES, J.—Plaintiff files motion to modify our original judgment in this case. The original suit was purely one asking for injunctive relief. In that suit, among other questions, the question of plaintiff's right and interest in the property involved was in issue, as well as the further question as to whether or not she had been compensated for it. The trial court dismissed her bill and pending the appeal, it appears from the motion to modify the judgment, that the city of Kansas City appropriated her property. We say her property, for such was the adjudication of this court, which is final, not only in this action, but in all others wherein it could be pleaded as *res adjudicata*. So also with regard to the question of compensation to plaintiff. By our judgment, the judgment of the lower court was reversed and remanded with directions to enter up a judgment making the temporary injunction permanent. By the present motion we are asked to so modify the directions given in that judgment "as to permit said appellant and plaintiff to file a supplemental petition in said circuit court setting up such damages as she claims to have sustained, as aforesaid, and authorizing said circuit court to inquire into said claim for damages and to award to appellant and plaintiff such damages as upon such inquiry the said circuit court may find that she has sustained, as aforesaid."

We hardly think this the proper practice. If *pendente lite* the city bodily appropriated the plaintiff's property, wrongfully, as would appear from our opinion, then plaintiff has her full and adequate remedy to recover damages for the same. She has the same rights as she would have had in case that, without the injunction suit, the city had wrongfully appropriated the property. We are of the opinion that, inasmuch as the question of damages was not a matter before this court, we should not modify our judgment, so as to

cover matters not here. Plaintiff, as above stated, has her adequate legal remedy and in addition has many questions of her case adjudicated. The better practice is to leave her to the legal action.

For these reasons the motion to modify the judgment will be overruled. All concur.