MARY BURKE and JOHN W. ENNIS v. THOMAS MURPHY and ELLEN DROMEY, Appellants.

Division Two, July 16, 1918.

1. **CONVEYANCE: Deed to Husband and Wife: Title in Survivor.** The owner of land and his wife conveyed his land to their daughter, and the daughter by another deed conveyed it to her father and mother. *Held,* that the last deed created an estate by the entirety in the father and mother, and upon the father's death the entire legal fee simple estate remained in the mother.

2. ————: ————: **Intended as Mortgage: Presumption: Character of Proof.** The presumption of law is that a warranty deed regular in form is not a mortgage, but was intended to be what it purports to be, and it will not be decreed to be a mortgage unless the presumption is overcome by clear and convincing proof.

3. ————: ————: ————: **No Debt.** A conveyance cannot be held to be a mortgage unless it is made for the purpose of securing the payment of a debt or the performance of an existing or future obligation.

4. ————: ————: ————: **Bond for Support.** A deed from the owner of land to his daughter will not be decreed to be a mortgage, when construed in conjunction with a bond of even date executed by the daughter by which she obligated herself to support her father and mother during their lives and to permit them to remain upon and use the land as a home, and to pay $1500 in case she defaulted in the performance of the obligation. There was no debt or obligation from the grantor to the grantee.

5. **ESTATE BY ENTIRETY: Claim of Homestead: Waiver.** A widow, who does not know that she is the owner of an estate by the entirety in the land, does not waive her fee simple title to the entire estate by claiming a homestead interest after her husband's death.

6. ———: **Waiver.** There can be no waiver without a knowledge of the rights waived and an intention to waive them.

7. ———: **Estoppel: Prejudicial Misleading.** If the surviving widow, to whom and her husband a conveyance of an estate by the entirety had been made, by claiming a homestead in the land did not cause her husband's heirs to do or to refrain from doing anything which worked to their financial loss or prejudice, they cannot invoke the doctrine of equitable estoppel.

8. ———: **Fraudulent Conveyance: Raised by Party Without Interest.** The point that a deed was fraudulently procured by the grantees cannot be raised by persons who will in no wise be benefited if the deed is set aside. Where a valid warranty deed was made by a daughter to her father and mother, the children of the said father by a former marriage cannot raise the point that a deed by the surviving widow to her said daughter was fraudulently procured, since if it were set aside the title would not pass to them, but to the heirs of the grantor.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*L. F. Cottey* and *J. C. Dorian* for appellants.

(1) The conveyance from James Murphy and wife to their daughter, dated November 5, 1874, was a mortgage, because it was made by the parents as security to their daughter for the performance by her of the stipulations contained in the defeasance, of same date and filing, wherein the daughter agreed to maintain her father and mother as contractors, for the payment of said property, during their natural lives in decency and comfort, and that the cancellation of the defeasance (called a bond and agreement), two days after it was filed, operated to nullify and cancel the mortgage. O'Neill v. Capelle, 62 Mo. 207; Book v. Beasly, 138 Mo. 463; Reilly v. Cullen, 159 Mo. 329. The recent case of Brightwell v. McAfee, 249 Mo. 562, is clearly in point

and decisive of our contentions in the instant case.    (2)
It is manifest that the conveyance from the father (the
mother joining merely to convey her dower under the
old form of acknowledgment), to the daughter, was the
sole consideration for the contemporaneous agreement,
or defeasance, between the father and daughter; and
that the cancellation of the latter, *ipso facto,* nullified
the former.    That was the construction the parties put
upon it at the time, and for thirty-five years thereafter.
It is the business of a court to ascertain and determine
the meaning and intention of the parties in making an
agreement.    The courts are not at liberty to disregard
the construction which the parties to a deed, by their
acts and conduct, have placed upon it for a long period
of years.    Patterson v. Camden, 25 Mo. 22; St. Louis
Gas Co. v. St. Louis, 46 Mo. 130; Jones v. DeLassus,
84 Mo. 545; Depot Co. v. Railway Co., 131 Mo. 305;
Williams v. Santa Fe Ry. Co., 153 Mo. 534.    (3) If Mary
Murphy, Sr., and her sole heir at law, Mary Burke,
plaintiff, acquired any  right under the conveyance of
November 10, 1874, then such rights. have been waived
by the acts and conduct of the parties.    And by parties
is meant both, mother and daughter, because the daughter
is the sole beneficiary of her mother, and, according to
the record, the acts and conduct of the daughter, with
respect to said lands, go hand in glove, with the acts
and conduct of her mother, with respect to said lands.
The facts authorize the application of the doctrine of
waiver in this case.    Hayes v. Manning, 263 Mo. 1.

*John W. Ennis, pro se* and for other respondents.

(1) A deed made to a husband and wife creates an
estate by the entirety and the title passes to the survivor.
Gibson v. Zimmerman, 12 Mo. 385; Gardner v. Jones,
52 Mo. 68; Frost v. Frost, 200 Mo. 480.    (2) The law
presumes that a deed, absolute on its face, is what it
purports to be and the burden is on the grantor to over-
come the presumption by clear and convincing evidence.
A conveyance cannot be construed to be a mortgage if
there is no debt of the grantor due to the grantee.    The

infallible test is that there must be a debt due from the grantor to the grantee. Duell v. Leslie, 207 Mo. 658; Jones v. Hubbard, 193 Mo. 163; Bobb v. Wolff, 148 Mo. 335; Book v. Beasley, 138 Mo. 460; Whelen v. Tobner, 71 Mo. App. 371; Worley v. Dryden, 57 Mo. 226; Hargadine v. Henderson, 97 Mo. 375; Brightwell v. McAfee, 249 Mo. 562. (3) The question of waiver is mainly a question of intention which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless it is so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby. Gillen v. Insurance Company, 178 Mo. App. 106; Fulkerson v. Linn, 64 Mo. App. 653; Francis & Hunter v. A. O. U. W., 150 Mo. App. 355; Reed v. Bankers' Union, 121 Mo. App. 419. Mary Murphy, Sr, could not waive that of which she was ignorant, nor could she be estopped where her course of conduct had led no one to change his condition to his prejudice. Seek v. Haynes, 68 Mo. 15; Hayes v. Manning, 263 Mo. 1; Fairbanks Morse Company v. Baskett, 98 Mo. App. 64; Belknap v. Bender, 75 N. Y. 453. If no one has been misled to his hurt, if no injury has arisen from the conduct, declarations or silence of a party, he will not be estopped from contradicting them, even though they would be conclusive against his right if not contradicted. Harrison v. McReynolds, 183 Mo. 548; Bramell v. Adams, 146 Mo. 83; Acton v. Dooley, 74 Mo. 67; Blodget v. Perry, 97 Mo. 273; Mueller v. Kaeffmann, 84 Mo. 329. Where a homestead is set off to a widow who owns the fee simple title to the land set apart as homestead, neither the widow nor her heirs are estopped from claiming fee. Hendrix v. Musgrove, 183 Mo. 300; Case v. Metzenburg, 109 Mo. 311; Ketchum v. Christman, 128 Mo. 38; Payne v. Daviess County Savings Association, 126 Mo. App. 599; Seek v. Haynes, 68 Mo. 15.

WILLIAMS, J.—This is a suit under Section 2535, Revised Statutes 1909, to determine the title to the

north half of the southeast quarter and the south sixty-five acres of the northeast quarter of section eighteen, township sixty-three, range twelve west. Knox County, Missouri.

A trial was had before the circuit court of Knox County, which resulted in a decree in favor of plaintiffs. Thereupon defendants duly appealed.

The petition is in the usual form. The answer contains six counts and alleges affirmative equitable defenses. No questions are raised as to the pleadings. If it becomes necessary we will refer to them in the course of the opinion.

James Murphy may properly be considered as the common source of title. He was twice married. His second wife was Mary Murphy, Sr. The defendants, Thomas Murphy and Ellen Dromey, were the only children by his first wife. Plaintiff Mary Burke (*nee* Murphy) was the only child by the second wife. Plaintiff John W. Ennis claims a one-third interest through mesne conveyances from the common source of title. Plaintiff Mary Burke claims a two-thirds interest in the same manner. Defendants contend that James Murphy did not succeed in disposing of this land by deed, but that he died seized of said land—hence the two defendants and plaintiff Mary Burke as the sole surviving heirs each have an undivided one-third interest in the land.

The legal title stands in the plaintiff, as will appear from the following conveyances of this land, to-wit:—

(1) Warranty deed dated November 5, 1874, from *James Murphy* (common source) and Mary Murphy, Sr., his wife, to Mary Murphy, Jr. (now Mary Burke, one of plaintiffs).

(2) Warranty deed dated November 10, 1874, from Mary Murphy, Jr., to *James Murphy and his wife, Mary Murphy, Sr.*

(3) (*James Murphy* died about 1877).

(4) Warranty deed dated June 14, 1913, from Mary Murphy, Sr., to *John W. Ennis* (plaintiff), conveying undivided one-third interest in the land.

275 Mo.—26

(5) Warranty deed dated June 14, 1913, from Mary Murphy, Sr., to *Mary Burke* (plaintiff), conveying an undivided two-thirds interest in the land.

The evidence upon the part of the plaintiffs further tends to show that Mary Murphy, Sr., died about two months after the execution of the two deeds last above mentioned; that she was 96 years old at the time of her death; that from the death of James Murphy down to the date of her own demise she was in the possession of this land; she signed the deeds by mark and there was some evidence tending to show that she could neither read nor write; the evidence further tends to show that her mind was normal on the date of the execution of the deeds above mentioned.

Defendants' evidence tends to establish the following facts:

At the February term, 1878, of the Knox County Probate Court and upon the application of said Mary Murphy, Sr., as the widow of James Murphy, deceased, said court made an order appointing commissioners to set off and assign to said widow her homestead in said lands (and other lands). At the May term, 1878, said commissioners reported that they had set off as such homestead the land now in controversy. Said report was by the court approved and ordered filed.

At the June (1903) term of the Knox County Circuit Court Thomas Murphy and Ellen Dromey (defendants in the case at bar) instituted suit against said Mary Murphy, Sr., (now deceased), and Mary Burke (plaintiff in the case at bar) and her husband to enjoin said defendants from cutting timber therefrom and otherwise committing waste upon said land. The petition in that suit, among other things, alleged that James Murphy died seized of the fee simple title to said land and that said Thomas Murphy, Ellen Dromey and Mary Burke were the sole heirs of said deceased and each owned an undivided one-third interest therein subject to the homestead interest therein of the widow, Mary Murphy, Sr. The joint answer of Mary Burke and Mary Murphy, Sr., admitted the title as alleged in

the petition in that suit, but denied that they were committing waste on said land. A trial was had resulting in a judgment for the defendants therein.

On October 3, 1912, Mary Murphy, Sr., Mary Burke and husband and Ellen Dromey instituted, as plaintiffs, a partition suit involving the land now in dispute. Thomas Murphy and his wife were made defendants in that suit. The petition therein alleged the title to be in Mary Burke, Thomas Murphy and Ellen Dromey as the sole heirs at law of James Murphy, deceased, subject to the homestead interest of the widow Mary Murphy, Sr. The petition alleged that the widow joined as plaintiff and consented and asked that the land be partitioned. The petition prayed that the land be sold and the proceeds divided between the parties according to their respective interests as above defined. Trial was had resulting in an interlocutory decree finding the title as alleged, fixing the value of the homestead interest and ordering that the land be sold and the proceeds be divided according to the respective interests of the parties. (This interlocutory decree in partition was afterwards upon motion of Mary Murphy, Sr., set aside. The said motion will be hereinafter copied).

Defendants also offered in evidence the record of a certain bond between James Murphy and Mary Murphy, Jr., which was filed for record November 7, 1874, the same date that the deed from James Murphy and wife to Mary Murphy, Jr., was filed. Said bond as shown by the record was as follows:—

"Greensburg, November 5, 1874.

"This Bond made and entered into by and between James Murphy and Mary Murphy (Jun.), all of the county of Knox and State of Missouri, Namely Whereas James Murphy has this day made and executed his deed to Mary Murphy, (Jun.) for one hundred and five acres of land to-wit:—

"65 acres on the South side of the NE qr of Section 18 and 80 acres the N ½ of the SE quarter of Section 18 and 20 acres the East end of the South-half of SE quarter of Section 18, all in Township Sixty

three (63) of Range Twelve (12) in Knox County, Mo.

"Also the following personal property I have sold and delivered to her own use and behalf forever, to-wit: Seven cows 4 two year old cattle 2 steers' and 2 heiffers 3 yearling stears and one heifer. 8 head of calves 2 head of horses, one colt, one waggon & Harness 27 head of fat Hogs, 20 head of stock hogs more or less, 2 breaking plows 1 Shovel Plow 1 Cultivator. 1 Dimond Plow 1 mower 1 corn Planter one hundred Bushells of Wheat and all other personal property & produce on the farm and owned by the said James Murphy at his date, and of the above described personal property known as the property own by him at this date Subject however to the following conditions, the said Mary Murphy (Jun) Binding herself in the full amount of $1500 if default be made in this Bond and agreement To Wit She agrees and binds herself to maintain James Murphy & Mary Murphy (her Father and Mother) as contractors for the payment of said property during their natural lives in decency and comfort permitting them to remain on said Real Estate as their home and James Murphy to have the use of said lands and said personal property to use as he sees proper during his and his wifes lives.

"Given under our hands and seals on this the 5th day of November A. D. 1874.

.his<br>
"James x Murphy (seal)<br>
mark

her<br>
"Mary x Murphy Jun. (seal)."<br>
mark

On the margin of the record of the above bond was the following entry:

"We the undersigned acknowledge full satisfaction for the within Bond and hereby release the within named property given under our hands this Nov. 9th, 1874.

his<br>
"James x Murphy (seal)<br>
mark

> her
> "Mary x Murphy Jun. (seal.)
> mark

"Attest Ed. M. Randolph
Clerk & Recorder, (seal)"

On March 6, 1893, Mary Burke, Jr., and husband, by warranty deed, conveyed to Thomas Murphy a one-third interest in the east half of the southeast quarter of the southeast quarter of Section 18, Township 63, Range 12, Knox County, Missouri, containing twenty acres more or less. (This twenty acres is not involved in the present suit. It was included in the deed (heretofore mentioned) from James Murphy and wife to Mary Murphy, Jr., and was also included in the deed (heretofore mentioned) from said Mary Murphy, Jr., to James Murphy and wife).

Patrick Powell testified that in the fall of 1874 he had a conversation with James Murphy as follows: (Murphy): "I made all my property to Mary." (Powell): "Jim, what did you do that for, to beat your creditors?" (Murphy): "No I done it to save myself from Tom; there is more of Tom's money in that farm than mine, and if Tom sued me he could put me out of house and home." (Powell): "Tom will never do that." (Murphy): "Do you mean that?" (Powell): "Of course." (Murphy): "If that is the case I will believe you and I will go in tomorrow or the day after and put it back in my name." Later Murphy told Powell "that he did put it back in his own name." Upon cross-examination it appeared that this witness's memory of dates was not very accurate. He was unable to say whether he left Missouri in the year 1839 or 1879, and when it was that he made visits back to the State.

Thomas Murphy (defendant) was offered as a witness to prove transactions occurring between himself and his deceased father, James Murphy, with reference to the land in dispute. This offer was, upon plaintiff's objection, excluded, and defendants saved an exception.

On October 26, 1874, James Murphy and wife executed to said Thomas Murphy a warranty deed conveying forty acres of land other than that involved in the present suit.

In rebuttal the plaintiff offered the following evidence:

The motion, filed by Mary Murphy, Sr., in the partition suit asking that the interlocutory decree be set aside, was verified by her counsel and omitting verification and formal parts was as follows:

"Comes now Mary Murphy, a plaintiff herein, by her attorney of record, John W. Ennis, and moves the court to reopen and review the interlocutory decree of partition heretofore rendered in this cause, and that said decree of partition be vacated and set aside by the court, for the following reasons to-wit:

"(1) Because the said decree of partition was rendered by this court under a mis-statement and mistake of fact as to the state of the record title to lands so partitioned.

"(2) Because the said plaintiff, Mary Murphy, is the sole owner of and is now in the possession of all the lands so partitioned, and the other parties to this suit have no interest of any kind or nature therein.

"(3) Because the said plaintiff Mary Murphy, is an aged and illiterate widow unable to read or write and has acted and permitted her attorneys to act for her under a mistake of fact, as to the state of the record title to the lands sought to be partitioned, in this, that she was led to believe that she was only entitled to a homestead interest in the said lands sought to be partitioned, when in truth and in fact she is the sole owner, in fee simple, of all said lands; that ever since the death of her husband James Murphy, who owned said lands, during his lifetime, jointly as tenant by the entirety, with this plaintiff, Mary Murphy, it has been represented to this plaintiff that she was only the owner of a homestead interest in said lands, and this plaintiff has ever since the death of her said husband so believed until long after the rendition of the said decree

of partition herein; that since the rendition of said decree this plaintiff has learned, and now avers the facts to be that she is the sole owner, in fee simple, of all the lands sought to be partitioned in this suit.

"Mary Murphy by John W. Ennis, her attorney."

The above motion was sustained by the court, and the interlocutory decree in partition was set aside and the cause was ordered continued.

After the taking of testimony in the case at bar had been closed by both sides the defendants were permitted to call John W. Ennis, one of the plaintiffs, as a witness, and to prove by him that he paid no money consideration for the deed whereby he received from Mrs. Murphy the undivided one-third interest in said land. Upon cross-examination he testified as follows:

"A.  I visited Mrs. Murphy in the month of June after the adjourning of circuit court, and I had visited Mrs. Murphy before the convening of the circuit court, I had discovered that the title to the land was in her name, and I had examined the deed and went to see her and informed her of the effect of the deed. She didn't know that a deed made to herself and husband vested the title in her and I informed her of that fact and told her the land was fixed under the partition proceedings, and if it was sold, her fee simple interest in the land would be destroyed, then she would lose her interest in the property. I proposed to her I would procure the setting aside of the decree of partition and would make all due effort to establish her interest in the property as a fee simple interest in the property. The substance of the agreement was if I did get the decree set aside, I should have a one-third interest in the property. That was my contract with Mrs. Murphy."

I. It appears from the evidence that the legal title to the land involved is in the plaintiffs. James Murphy (the common source of title) conveyed the land involved, together with twenty acres of other land not **Estate by Entirety.** here involved, to his daughter Mary Murphy, Jr. Thereafter the daughter, Mary, conveyed the land here in controversy (together with the twenty

acres not in controversy) to James Murphy and his wife Mary Murphy, Sr. Under the law this created an estate by the entirety in James Murphy and Mary Murphy, his wife. Upon the death of James Murphy, occurring in 1877; the entire legal fee simple estate remained in Mary Murphy, the wife. [Frost v. Frost, 200 Mo. 474, l. c. 483.] Thereafter on June 14, 1913, she conveyed one-third of the legal title to plaintiff Ennis, and two-thirds thereof to her only child, Mary Burke, one of the plaintiffs.

As we understand appellants' contentions, they undertake to defeat the legal title as above set forth, on the following grounds, to-wit:

(1) That the deed from James Murphy and wife to Mary Murphy, Jr. (when construed in conjunction with the bond of even date therewith), should be decreed to be a mortgage; and that the equitable title remained in said James Murphy at the time of his death, and that his three children, as his sole heirs, are now each entitled to a one-third interest therein, the homestead interest of the widow having terminated upon her death.

(2) Even though the above deed is not decreed to be a mortgage, yet said Mary Murphy, Sr., having claimed only a homestead estate in the land from the time of her husband's death in 1877 up until just before she made the deeds to the plaintiffs in 1913, waived her title in fee simple, and her grantees received no title. And further that said grantees are estopped from claiming said title.

The above propositions will be discussed in their order.

II. Should the deed dated November 5, 1874, from James Murphy and wife to Mary Murphy, Jr., be decreed a mortgage? We think not. The deed is a warranty deed in regular form. The law presumes that the instrument was so intended. [Bobb v. Wolff, 148 Mo. 335, l. c. 344.] The burden is upon the grantor or those claiming under him to overcome this presumption by clear and con-

Intended as a Mortgage.

vincing proof. [Brightwell v. McAfee, 249 Mo. 562; Bobb v. Wolff, supra.]

The very purpose of a mortgage is to *secure* the payment of a debt or the performance of an obligation. In the case of Duell v. Leslie, 207 Mo. 658, this subject is fully discussed and authorities reviewed. In that case the following quotation from Jones on Mortgages was quoted with approval, viz:

"There can be no mortgage without a debt. There may be agreements for the performance of obligations other than the payment of money; but leaving these out of view it is essential that there be an agreement, either express or implied, on the part of the mortgagor or some one in whose behalf he executes the mortgage, to pay to the mortgagee a sum of money, either on account of a pre-existing debt or a present loan."

Commenting on the above rule the court said: "This is the universally recognized doctrine applicable to the essential requisites of a mortgage." [*Ibid.*, l. c. 668.]

In the case of Sheppard v. Wagner, 240 Mo. 409, l. c. 433, the court quoted with approval the following statement of the rule:

"It may be taken as universally true in law that no conveyance can be a mortgage unless it is made for the purpose of securing the payment of a debt, or the performance of a duty either existing at the time the conveyance is made or to be created or to arise in the future."

The two above quoted excerpts supplement each other and when read together give a clear understanding of the rule. To the same effect are the following authorities: Book v. Beasley, 138 Mo. 455, l. c. 461; Bobb v. Wolff, 148 Mo. 335, l. c. 344; Worley v. Dryden, 57 Mo. 226, l. c. 232.

Measured by the above rule do the facts in the case show the deed to have been executed as a mortgage? We think not. The evidence shows that James Murphy and wife made a straight out conveyance of this land by warranty deed to their daughter. In consideration of this agreement the daughter executed the instru-

ment, referred to in the evidence as a bond, whereby she obligated herself to support her father and mother during their natural lives and to permit them to remain upon and to use the land as a home. The bond provides that if she defaults in the performance of the foregoing obligation she shall pay the sum of $1500.

It therefore appears that the grantors fully performed their portion of the contract by conveying to the daughter the land, and there remained no outstanding debt or obligation, or the provision for the future existence of a debt or obligation, from the grantors to the grantee. The outstanding debt or obligation was all the other way. It was one owed by the grantee to the grantors. Under such facts it cannot be said that the grantors in said deed occupied the status of mortgagors with reference to the property. Whether they possessed rights created by the bond which were similar to that of mortgagees (27 Cyc. 981) we need not here determine for two reasons, viz: (a) Appellants can only obtain relief by showing that the apparent grantors were mortgagors and not mortgagees; (b) The bond was afterwards by consent of all concerned, duly released of record.

III. Did Mary Murphy, Sr., waive her title as tenant by the entirety by claiming a homestead interest in the land? We think not.

We are not aware that it has ever been held that a legal fee simple title to land can be divested by the process of a waiver when the acts constituting a waiver (as that term is used in the law) are unaccompanied by other acts or facts sufficient to invoke the rules of estoppel. Appellants rely upon the case of Hayes v. Manning, 263 Mo. 1, in support of their contention. That case applies the doctrine of waiver to the equitable rights to possession claimed by certain trustees of church property. That case was not dealing with a situation similar to the one here involved. It was not intended by that opinion and nothing therein stated can be properly construed as holding that the doctrine of waiver in and of itself will ever operate to divest the

Waiver.

legal title of land. But even though it be conceded *arguendo* that the doctrine of waiver could work a divestiture of a legal fee simple title to land, the facts here involved would not call for the application of the rule. Waiver involves a full knowledge of the rights waived and an intention to waive the same. [Hayes v. Manning, supra, 1. c. 46.] There is no proof in this record that Mary Murphy, Sr., understood her rights under the deed to herself and husband, prior to 1913. In fact, the evidence conclusively shows we think that she did not know that she owned the fee simple title to the land until just a short time prior to the execution by her of the conveyances conveying the title to plaintiffs. The evidence shows that Mary Murphy, Sr., was an illiterate woman and that although, in fact, she owned the fee simple title to the land she thought she had only a homestead interest in the land. She knew no better until advised by her attorney in 1913 and just prior to the execution by her of the deeds conveying the land to the plaintiffs.

Neither can appellants sucessfully invoke the doctrine of estoppel. It does not appear from the evidence that this conduct on the part of Mary Murphy, Sr., in claiming a homestead in the land, caused
<span style="margin-left:2em">Estoppel.</span> either of the defendants to do or to refrain from doing anything which worked to their financial loss or prejudice. There is therefore absent from the case one of the essential prerequisites of the doctrine of equitable estoppel. [Seek v. Haynes, 68 Mo. 13, 1. c. 17; Thompson v. Lindsay, 242 Mo. 53, 1. c. 76.]

IV. Appellants further contend that the two deeds procured by plaintiffs on June 14, 1913, from Mary Murphy, Sr., were fraudulently procured and should be set aside.

The conclusion reached above renders a discussion of this point unnecessary. As found above the title to said land was in Mary Murphy, Sr., at the time said
<span style="margin-left:2em">Fraudulent Conveyance.</span> deeds were executed. Even if said deeds were set aside the title would then stand in the heirs of said grantor. The appellants are not

heirs of said grantor and hence their interest is not sufficient to authorize them to maintain the point. The respondent Mary Burke is the sole heir at law of said grantor. She alone would receive the entire title if said deeds were set aside. But she makes no complaint. On the other hand she takes the position that the deeds were valid. It follows that the question becomes a moot one, the determination of which is unnecessary to a decision of the case.

We find no error in the case. It therefore follows that the judgment should be affirmed. It is so ordered. All of the judges concur.