## APPEAL OF SUSIE M. ROOT, EXECUTRIX, ESTATE OF HENRY L. ROOT.

### Docket No. 2825.   Promulgated November 30, 1926.

1. The common law doctrine of estates by the entirety obtains in the State of Missouri.

2. The fact that the husband pays the full consideration out of his own funds for land conveyed to him and his wife as tenants by the entirety does not have the effect of constituting such grantees other than tenants by the entirety.

3. A rule of property established by the statutes or decisions of a State is binding on the Federal courts in construing the transfer or devolution of property under such rule.

4. Under the laws of Missouri there is no transfer, by reason of the death of one spouse, of any interest or estate of that spouse in an estate by the entirety, to the surviving spouse.

5. Under the provisions of the Revenue Act of 1921, an estate tax is imposed on the transfer of the net estate of the decedent, and since, under the laws of Missouri, there was not a transfer of an estate to the surviving spouse on the death of the decedent, in land theretofore held by him and his wife as tenants by the entirety, the inclusion of the value of such an estate as a part of the gross estate of the decedent was without authority in law.

*John L. Gaylord, Esq.*, for the petitioner.
*J. F. Greaney, Esq.*, for the Commissioner.

This appeal involves a deficiency asserted by the Commissioner under the estate-tax provisions of the Revenue Act of 1921. The issue presented is whether the value of real property owned by a decedent and his wife at the time of the death of the former, as tenants by the entirety, is properly to be included as a part of the gross estate of the decedent for estate-tax purposes. All of the facts were stipulated.

#### FINDINGS OF FACT.

Henry L. Root died on the 26th day of February, 1923, in Kansas City, Jackson County, Mo., and left surviving, as his sole heir, his

wife, Susie M. Root, who was duly appointed and qualified as executrix of his estate in the Probate Court of Jackson County, Missouri.

On the 29th day of November, 1921, one James Ketner and Ethel N. Ketner, his wife, by warranty deed, conveyed to H. L. Root and Susie May Root, husband and wife, the following described real estate, to wit:

All of Lot 12 and all of the East 25 feet of Lot 11, Block 15, of Country Club Ridge, an addition in Kansas City, Jackson County, Missouri.

At the time of the death of Henry L. Root, the said Henry L. Root and Susie M. Root, husband and wife, were the owners of the real estate above described. The warranty deed above referred to was duly recorded on the 6th day of December, 1921, in the office of the Recorder of Deeds in and for the said Jackson County, Missouri, at Kansas City in that State. The actual value of the real property in question on the date of the death of Henry L. Root was $8,000.

Susie M. Root, executrix of the estate of Henry L. Root, deceased, in conformity and in compliance with the provisions of the Revenue Act of 1921, and the Federal Estate Tax Regulations, prepared and caused to be filed in the office of the collector at Kansas City, Mo., in the Sixth Missouri District, a return for this estate on Treasury Department Form 706, for the determination of the estate tax thereon, the return having been filed on the 23rd day of February, 1924, and a tax in the amount of $1,922.76 was paid by said executrix on that day.

The return filed by the executrix set out, as Item One in Sechedule "D" thereof, the property above described and the value thereof, and that return stated that said property was an estate by the entirety in the name of the said Henry L. Root and Susie M. Root, husband and wife.

On the 26th day of March, 1924, the above-mentioned return was examined by an agent of the Bureau of Internal Revenue, one Stewart B. Sturgis. The inclusion in the tax return of the value of the above described property as a part of the gross estate of Henry L. Root, deceased, was objected to and protested by the executrix to Sturgis, and was by him eliminated from the return and from his audit thereof, which audit was dated the 28th day of March, 1924. A copy thereof was furnished to the executrix.

The elimination of the property in question, and its value, from the gross estate of the deceased, and other additional net adjustments allowed to the taxpayer, decreased the amount of the taxable estate $121,137.79 (as shown by the return) to $114,358.71 (as shown by the audit and report of Sturgis), resulting in a corresponding reduction in the amount of the tax liability of $135.59, which included the tax

on the value of the property in question, and being the difference between $1,922.76, the amount of tax paid by the executrix, and $1,787.17, the amount of tax liability of the estate as shown by the audit of Sturgis.

The Commissioner approved the report of Sturgis, with the exception of his action in eliminating the property in question from the gross estate. The Commissioner included the value of the property in question in the gross taxable estate, and as a result of its inclusion therein he found and assessed a deficiency in tax of $24.41. The petitioner was advised of the determination of the Commissioner and of the assessment of the said deficiency, by letter from the Commissioner under date of January 30, 1925.

The exhibits attached to and made a part of petitioner's petition are true copies of the letters testamentary granted said executrix, the statutory deficiency notice of the Commissioner dated January 30, 1925, and the warranty deed, dated November 29, 1921, from James Ketner and Ethel N. Ketner, husband and wife, to H. L. Root and Susie May Root, husband and wife.

From the documents referred to in the stipulation we find that the petitioner was appointed executrix of the estate of the decedent on March 5, 1923, by the Clerk of the Probate Court of Jackson County, Missouri, and duly qualified to act as such executrix.

The material portions of the Commissioner's statutory notice of deficiency, dated January 30, 1925, to the petitioner are as follows:

Your claim is based upon the contention that the homestead of this decedent was held by himself and wife as tenants by the entirety and as such should not be included in the gross estate for tax.

The record discloses that the widow of this decedent did not contribute any part of the purchase price and that her interest in this property is such as is specified in Section 402 (d) of the Revenue Act of 1921 * * *.

The evidence submitted by you is not sufficient to support your claim for refund, and it is therefore rejected in its entirety and the amount of tax remains as set out in Bureau Letter of July 17, 1924. This deficiency tax of $24.41 will bear interest at the rate of ten per centum per annum from one month after notice and demand by the Collector, until paid, in accordance with the provisions of Section 407 of the Revenue Act of 1921.

The material portions of the deed of conveyance dated November 29, 1921, are as follows:

THIS INDENTURE, Made on the 29th day of November, A. D. One Thousand Nine Hundred and Twenty-One, by and between James Ketner and Ethel N. Ketner, husband and wife, of the County of Jackson, State of Missouri, parties of the first part, and H. L. Root and Susie May Root, husband and wife, of the County of Jackson, State of Missouri, parties of the second part;

WITNESSETH: THAT THE SAID PARTIES OF THE FIRST PART, in consideration of the sum of One ($1.00) Dollar and other valuable considera-

tions to them paid by said parties of the second part (the receipt of which is hereby acknowledged) do by these presents, Grant, Bargain and Sell, Convey and Confirm unto the said parties of the second part, their heirs and assigns, the following described lots, tracts or parcels of land. * * *

[Here follows the description of the land set out above in these findings.]

### OPINION.

KORNER, *Chairman:* The petitioner, Susie M. Root, brings this proceeding as executrix of her deceased husband to test the right of the Commissioner to assert a tax on the estate of the decedent, in the computation of which he has included as a part of the gross estate the value of a certain parcel of real property which was owned by the decedent and his wife up to the time of the death of the former. From the agreed statement of facts upon which the case was submitted it appears that by warranty deed, executed November 29, 1921, there was conveyed to H. L. Root and Susie May Root, husband and wife, a lot of land in Kansas City. H. L. Root died on February 26, 1923, and left surviving, as his sole heir, his wife, Susie May Root, who was duly appointed and qualified as executrix of his estate. The value of the property is not in dispute.

It is unnecessary to detail here the chronology of events leading up to the bringing of this proceeding. They are fully set out in the findings of fact. Suffice it to say that the Commissioner proposes to collect an estate tax from the estate of the decedent predicated upon the inclusion, as a part of the gross estate, of the value of the land just referred to. The petitioner contends that the land was conveyed to her and her deceased husband as tenants by the entirety and was so held by them until the death of the decedent, and that, as such, it is no part of decedent's estate and is, therefore, not properly to be included in the value of that estate under the provisions of the Revenue Act of 1921 relating to estate taxes. The Commissioner contends that the value of the land in question should be so included, whether or not the grantees of the property were tenants by the entirety, for the reason that the value of property so held is specifically made a part of the gross estate by that statute. In answer to this contention of the Commissioner, the petitioner insists that, if such be the effect of the provisions of the Revenue Act, such provisions are in contravention of Article XIV, section 1, of the Constitution of the United States, in that it constitutes an unlawful taking of the property of Susie M. Root without due process of law.

We are convinced from the authorities called to our attention that the common law doctrine of estates by the entirety obtains in the State of Missouri. *Frost* v. *Frost*, 200 Mo. 474; 98 S. W. 527; *Kegan* v. *Haslett*, 128 Mo. App. 286; 107 S. W. 17. The portion of the Missouri statute, section 4600, R. S. 1899; Ann. Stat. 1906, p. 2499,

which was construed in *Kegan* v. *Haslett, supra,* has been carried forward into the revision of 1919, being section 2273, R. S. 1919. It is equally clear from the authorities that this doctrine obtains notwithstanding the " Married Woman's Act." *Frost* v. *Frost, supra; Stifel's Union Brewing Co.* v. *Saxy,* 273 Mo. 159; 201 S. W. 67; *Ashbaugh* v. *Ashbaugh,* 273 Mo. 353; 201 S. W. 72. We are likewise convinced that under the laws of Missouri the deed to H. L. Root and Susie May Root, husband and wife, created in the grantees therein an estate by the entirety. *Hume* v. *Hopkins,* 140 Mo. 65; 41 S. W. 784; *Wilson* v. *Frost,* 186 Mo. 311; 85 S. W. 375; *Holmes* v. *Kansas City,* 209 Mo. 513; 108 S. W. 9; *Burke* v. *Murphy,* 275 Mo. 397; 205 S. W. 32; *Traw* v. *Heydt* (1919), 216 S. W. 1009; *Elliott* v. *Roll* (1920), 226 S. W. 590. These decisions and others which have been brought to us leave no doubt in our minds that from the earliest days down to the time of the death of Henry L. Root the doctrine of estates by the entirety and the legal consequences flowing therefrom obtained and constituted a rule of real property in that State.

We now inquire as to the effect of a rule of property, established by the laws and decisions in a State, on a Federal court, in determining an issue arising out of the same state of facts. The petitioner contends that the laws and decisions of the State of Missouri defining and determining an estate by the entirety and the legal consequences flowing therefrom, constitute a rule of property in that State which is binding upon the Federal courts in the determination of the same question. Her contention is borne out by the highest authority.

In *Jackson* v. *Chew,* 12 Wheat. 153, 167-169, the court said:

After such a settled course of decisions, and two of them in the highest court of law in the state, upon the very clause in the will now under consideration, deciding that Joseph Eden did not take an estate-tail, a contrary decision by this court would present a conflict between the state courts and those of the United States, productive of incalculable mischief. If, after such an uninterrupted series of decisions for twenty years, this question is not at rest in New York, it is difficult to say, when any question can be so considered. And it will be seen, by reference to the decisions of this court, that to establish a contrary doctrine here, would be repugnant to the principles which have always governed this court in like cases. * * *

* * * This court adopts the state decisions, because they settle the law applicable to the case; and the reasons assigned for this course, apply as well to rules of construction growing out of the common law, as the statute law of the state, when applied to the title of lands. And such a course is indispensable, in order to preserve uniformity; otherwise, the peculiar constitution of the judicial tribunals of the states and of the United States, would be productive of the greatest mischief and confusion.

* * * And whether these rules of land titles grow out of the statutes of a state, or principles of the common law adopted and applied to such titles, can make no difference. There is the same necessity and fitness in

preserving uniformity of decisions in the one case as in the other. * * *
* * * After such a series of adjudications for such a length of time, in the state courts, upon the very point now before us, and relating to a rule of landed property in that state, we do not feel ourselves at liberty to treat it as an open question.

The same court in *Suydam* v. *Williamson*, 24 How. 427, 433–434, approved this doctrine and quoted from *Jackson's* case, *supra*, as follows:

The inquiry is very much narrowed by applying the rule which has uniformly governed this court, that where any principle of law establishing a rule of real property has been settled in the State courts, the same rule will be applied by this court that would be applied by the State tribunals.

Mr. Justice Story, in *United States* v. *Crosby*, 7 Cr. 115, 116, said:

The question presented for consideration, is, whether the *lex loci contractus* or the *lex loci rei sitæ* is to govern, in the disposal of real estates. The court entertain no doubt on the subject; and are clearly of opinion, that the title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situate.

To like effect the Supreme Court, in *Clarke* v. *Clarke*, 178 U. S. 186, 191, quoting from *DeVaughn* v. *Hutchinson*, 165 U. S. 566, 570, said:

It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances.

To the same effect see the recent decision in *United States* v. *Title Insurance & Trust Co.*, 265 U. S. 472, 486. Many decisions of the Supreme Court affirming this principle are to be found.

Decisions of Federal courts inferior to the Supreme Court are to the same effect. The District Court for the Northern District of California, in deciding *Blum* v. *Wardell*, 270 Fed. 309, at p. 313, said:

The plaintiffs further contend that this court is not bound by the construction placed upon the laws of California by the highest court of the state. With this contention I am unable to agree. The federal tax is imposed on the transfer of the net estate, *and whether there is a transfer upon the death of the husband depends upon the statutes and rule of decision in the state where the parties reside and the property is situate.* (Italics ours.)

The Circuit Court of Appeals, Ninth Circuit, affirming the decision of the District Court (276 Fed. 226) went further and held that if the law of the State determined that, for purposes of the State inheritance tax there was no transfer, that determination is binding on the Government for purposes of Federal estate tax. In that case the Supreme Court denied the Government's petition for a writ of certiorari. To the same effect see *First National Bank* v. *Obion County*, 3 Fed. (2d) 623, 626–627; *Bellamy* v. *Pitts*, 4 Fed. (2d) 523, 525 (C. C. A., Fifth Circuit). In view of these decisions, we conclude that our consideration of the issue in the instant case must be in the

light of the law and decisions of the State of Missouri in respect of estates by the entirety.

We turn, then, to the decisions of the courts of Missouri, which may be regarded as stating not merely a rule of law but also a rule of property in that State, to determine what those rules are with respect to estates by the entirety. In *Gibson* v. *Zimmerman*, 12 Mo. 385, it is stated that husband and wife are the only persons who can be tenants by the entirety; that this tenancy must be created or take effect during coverture, and owes its qualities to the unity of the persons of husband and wife. The court states that it is well settled, that if an estate be given to a man and his wife, they take, neither as joint tenants, nor as tenants in common, for, being considered as one person in law, they can not take by moieties, but both are seized of the entirety, the consequence of which is that neither of them can dispose of any part without the assent of the other, but the whole goes to the survivor.

In *Garner* v. *Jones*, 52 Mo. 68, the court held that in the case of an estate by the entireties there was no survivorship as in joint tenancies, but a continuance of the estate in the survivor as it originally stood. The only change by death was in the person, not in the estate. Before death both spouses constituted one person holding the entire estate, and after the death of either, the survivor remained as the only holder of the entire estate. This case was quoted with approval in *Stifel's Union Brewing Co.* v. *Saxy*, 273 Mo. 159; 201 S. W. 67, 68.

In *Frost* v. *Frost*, *supra*, the Supreme Court of Missouri said:

Washburn, speaking of estates in entirety, says: "But, if the estate is conveyed to them originally as husband and wife, they are neither tenants in common nor properly joint tenants, though having the right of survivorship, but are what are called 'tenants by entirety.' While such estates have, like a joint tenancy, the quality of survivorship, they differ from that in this essential respect, that neither can convey his or her interest so as to affect the right of survivorship in the other. They are not seized, in the eye of the law, of moieties, but of entireties." 1 Washburn, R. P. (6th Ed.) p. 562. The common-law doctrine of estates in entirety is the law of this state. *Hall* v. *Stephens*, 65 Mo. 670, 27 Am. Rep. 302; *Bank* v. *Fry*, 168 Mo. 492, 68 S. W. 348. The text-writer last above quoted, on the same subject, adds that on the death of either the survivor does not acquire a new title, but holds only the same title which he or she took in the beginning, freed of the contingency.

The decisions of the courts of Missouri are replete with utterances in line with those just given, but the law of that State is exhaustively treated and seems to be well summarized in the recent cases of *Stifel's Union Brewing Co.* v. *Saxy*, *supra* (decided in 1918), and in *Ashbaugh* v. *Ashbaugh*, *supra* (decided in 1918). In the former case the court said:

Warvelle on Real Property, §111, says:

"It differs from the estate of joint tenancy in that joint tenants take by moieties and at the same time are each seized of an undivided part of the

whole. In the estate by entirety neither tenant is seized of a part, or moiety, but both of them have the entire estate, and as this involves in itself a physical impossibility in the case of ordinary individuals it necessarily follows that effect can only be given to the grant by regarding both tenants as constituting but one person. But this, in fact, is just what the law does, and as this unity of person is never recognized save in the case of husband and wife, the estate by entirety is confined exclusively to persons within the marriage relation."

     *      *      *      *      *      *      *

" Both would therefore be seized of the entire estate; neither could dispose of any part of same without the assent of the other, and upon the death of either the whole estate would *remain* in the survivor. In this latter respect while the right of survivorship gives to the estate an apparent resemblance to joint tenancy, it yet differs materially from joint tenancy, for the survivor succeeds to the whole not by the right of survivorship simply, as is the case with joint tenants, but by virtue of the grant which vested the entire estate in each grantee, or, in contemplation of law, in one person with a dual body and consciousness."

Stewart says (section 306) :

" On the death of either, the other has the whole estate, continuing alone his or her former holding, and not taking by survivorship in the sense that a surviving joint tenant does." (Italics ours.)

The court then, after quoting with approval from *Garner* v. *Jones, supra,* continues:

In *Thornton* v. *Thornton,* 3 Rand. (Va.) 179, it was said :

" But husband and wife have the whole from the moment of the conveyance to them; and the death of either cannot give the survivor more."

In *Ashbaugh* v. *Ashbaugh, supra,* the court said:

An estate by the entireties is created by a conveyance to the husband and wife by a deed in the usual form. It is one estate vested in two individuals who are by a fiction of law treated as one person, each being vested with entire estate. Neither can dispose of it or any part of it without the concurrence of the other, and in case of the death of either the other retains the estate. It differs from a joint tenancy where the survivor succeeds to the whole estate by right of the survivorship; in an estate by entireties the *whole estate continues* in the survivor. *The estate remains the same as it was in the first place, except that there is only one tenant of the whole estate whereas before the death there were two.* (Italics ours.)

That the rule obtaining in the State of Missouri is the general and accepted rule of the common law is evidenced by the opinion of Mr. Chief Justice Fuller, in *Hunt* v. *Blackburn,* 128 U. S. 464, 469, wherein he said:

Undoubtedly, at common law, husband and wife did not take under a conveyance of land to them jointly, as tenants in common or as joint tenants, but each became seized of the entirety, *per tout, et non per my;* the consequence of which was that neither could dispose of any part without the assent of the other, but the whole remained to the survivor under the original grant.

The fact that the husband pays with his own funds for the land taken by him and his wife as tenants by the entirety, does not make

any difference. They become thereby owners by the entirety. *Elliott* v. *Roll, supra; Bender* v. *Bender,* 281 Mo. 473; 220 S. W. 929.

The Commissioner's position is simply stated. It is, in effect, that the statute requires that to the extent of his interest therein held as tenants by the entirety by the decedent and any other person, the value of such interest shall be included in the value of the gross estate, and that in view of this requirement the value of the property in question here must be so included. Let us examine this matter closely.

The provisions of law under which this controversy arises are sections 401 and 402 of the Revenue Act of 1921, which, so far as material here, are as follows:

SEC. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act. * * *

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

     *          *          *          *          *          *          *

(d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent or any other person. * * *

It will be noted that the imposition of the tax is upon the " transfer " of the net estate of the decedent. This is conformable to the language of the Supreme Court in *Knowlton* v. *Moore,* 178 U. S. 41, 56, wherein, after an exhaustive review of the subject of death duties, Mr. Justice White said:

* * * Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes, or privilege taxes, nevertheless tax laws of this nature in all countries rest in their assent upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested.

If, as the statute provides and the Supreme Court holds, the tax is imposed on a " transfer " from the dead to the living, there remains for determination the sole question of what was transferred by the decedent, H. L. Root, to his wife. The rule of the common law as to estates by the entirety is clear, and the application of the rule in the State of Missouri is no less so, that there is no transfer of interest or estate to the survivor on the death of either spouse. This is necessarily so because each took the whole estate by the original

grant by reason of the unity of person existing under the marriage relation. The death of one spouse added nothing to the interest or estate of the survivor. The conclusion is, therefore, irresistible that there was not a transfer of any estate from H. L. Root to Susie M. Root. The effect of the Commissioner's proposed action would be to tax the executrix on an alleged transfer to her of property which, as we have seen from the rule of property established in Missouri, has not and can not be transferred to the executrix by, or because of, the death of the decedent, and which property, as we have seen, belonged to Susie May Root in her own right, both before and after the death of her husband. In other words, the effect of the Commissioner's proposed action would be to make the estate of the decedent pay an estate tax for the transfer of property to Susie M. Root which was always hers and which was not transferred to her by her husband at any time.

It is argued that what this statute taxes is not necessarily the interest or estate to which Susie M. Root succeeded on the death of her husband, or the interest or estate transferred to her thereby, but that it is the interest of the decedent which ceased by reason of his death. This point has been raised in other similar cases. The Circuit Court of Appeals, speaking to this point in *Lynch* v. *Congdon*, 1 Fed. (2d) 133, 135, said:

> * * * It is the theory of the plaintiff in error that the tax is not upon the transfer of property included in the gross estate, but upon the cessation of decedent's interest in these deposits; that it is not a question of transfer from a joint depositor to the surviving joint depositor; that there is in fact no such transfer, each depositor being an owner of the entire interest in the entire property during their joint lives, and therefore there is no passing of property from decedent to the survivor, but merely a cessation of decedent's interest in the property; that such property is the same as any other property, and that Chester A. Congdon had the entire interest in the same, and that it ceased by reason of his death. However interesting and debatable as a matter of first impression this theory may be, we think consideration of it foreclosed by the decision of the Supreme Court of the United States in *Shwab* v. *Doyle*, 258 U. S. 529, 42 Sup. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454 and companion cases.

We do not find that it has been held that an estate tax was or could be a tax on an interest which was annihilated at death. The decedent could not transmit, transfer or devise to someone else at his death such interest as he had in the real estate here in question. At his death his interest was reduced to nothing; it was as if it had never existed. It was annihilated—wiped out. In our opinion, cases like *Y. M. C. A.* v. *Davis*, 264 U. S. 47, and *Edwards* v. *Slocum*, 264 U. S. 61, are inapplicable, for there it was held that, where there has been a transfer to the executor, the residuary legatee may have to pay a tax more logically assessed against primary legatees.

In a recent decision of the Court of Claims in *Blount* v. *United States*, 59 Ct. Cl. 328, the court considered the same point and, at p. 346, said:

In a late case it is said that what this law taxes is not the interest to which legatees or devisees succeeded on death, but the interest of the decedent which ceased by reason of his death. See *Y. M. C. A.* v. *Davis*, 264 U. S. 47. But this does not mean that the tax is upon an *estate* which ceases by reason of the death. It would hardly be contended that this statute imposes a tax on an estate for life held by one at the time of his death on the theory that the tax is upon an interest which ceases by reason of the death. It was said by Mr. Justice White, in *Knowlton* v. *Moore*, 178 U. S. 41, 57: "Confusion of thought may arise unless it be always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." The tax here is upon the transfer of an estate which passes from the decedent, and is not upon an estate which ceases with his death.

In the *Blount* case the court was speaking of an estate by the entirety. In that case the facts were in all material respects on all fours with those in the instant case. The only essential difference between the two cases is the fact that in the *Blount* case the grant of the estate by the entireties took place before the enactment of the statute under which the tax was sought to be imposed, while in the instant case the grant was made after the enactment of the Revenue Act of 1921 under which this controversy arises. In the *Blount* case the decision was not, however, made to turn on that point. After discussing the application of the doctrine of estates by the entirety in the District of Columbia, where that case arose, in connection with the Revenue Act of 1916, the terms of which are essentially identical with those of the Revenue Act of 1921 in so far as they relate to the subject matter here, the court concluded:

It follows that the tax should not be assessed against the estate of tenants by the entirety because the wife did not take as upon a transfer from the husband at his death, but took under the original grant, his estate ceasing.

In the *Blount* case an appeal was taken to the Supreme Court of the United States, but when the case came on for argument the appeal was dismissed on the motion of the Solicitor General. In our opinion the conclusion of the Court of Claims above quoted was the correct conclusion. We are unable to distinguish it in principle from the instant case. In our opinion the fact that the conveyance of the land in question here was made to H. L. Root and his wife subsequent to the enactment of the Revenue Act of 1921 does not alter the case.

The argument is made that it is within the power of Congress to tax the value of such an estate as is here under consideration. It is argued that while in *United States* v. *Field*, 255 U. S. 257, the

court held that the existence of a power of appointment does not of itself vest any interest in the donee in the appointed estate, which may be .included as a part of the deceased donee's gross estate, that nevertheless, the decision of the court was made to turn on the point that, in the statute under consideration in that case, there was not an express purpose to tax property passing under a general power of appointment exercised by a decedent had such a purpose existed. It was further argued that the court there left the question open as to what the rule would be in a case wherein the grant was executed subject to the passage of an act specifically including such property in the gross estate. From this it is argued that, in the instant case, Congress had specifically provided for the inclusion as a part of the gross estate of the interest held by decedent as tenants by the entirety with his wife or any other person, and that it was within the power of Congress so to provide.

To our minds, this argument is beside the point. We choose rather to look to what Congress *has provided*, than to what it *might have provided*. We are impressed with the fact that each case before us carries within itself its full burden of difficulties, and we prefer to bear these than to fly to others which may be highly interesting and, under a different statute, worthy of the gravest consideration. We opine that we have fulfilled our duty in a case when we confine our views to the given situation and render a decision on that alone.

Section 401 of the Revenue Act of 1921 contains the only provision where an estate tax is imposed. That section is the imposing clause of the Federal estate tax. There is no such tax imposed by any other section. Section 402 provides the method of determining the value of the gross estate out of which the net estate (determined as provided in section 403) is evolved. When the value of the net estate is determined, the basis of the tax is found. But before the net estate can be used as a basis for such a tax it must have been *transferred* by the decedent at his death. The section which imposes the tax, the only section which does so, provides that " a tax * * * is hereby *imposed upon the transfer* of the net estate of every decedent * * *." Note that the tax is not *upon the net estate*. If it were, we would have a different question to decide, but, as we have said, we are now considering only what is provided by the statute. Since Congress has imposed the tax on the *transfer* of a certain estate, the whole argument and the conclusions therefrom must rest on the premise that there was a transfer. The first step to be taken, then, is to determine if there was a transfer of something. If there was, then the next step is to determine what was transferred and the value thereof. On the other hand, if it be

determined that nothing was transferred, then the conclusion is both logical and irresistible that there is nothing on which to impose a tax. If the estate in question was not transferred, it becomes unnecessary and even absurd to attempt to find the value of a nonexistent element. Sections 402 and 403 enumerate the elements entering into the value of the estate and provide the method for measuring that value. If a given estate is transferred, it becomes necessary to determine its value, and at that point it may be important and interesting to consider whether Congress had acted within the scope of its power and authority in providing for its inclusion among the elements going to make up that value. But, as we have said, if it be first determined that at his death the decedent did not transfer a given estate, the question as to whether Congress *might* have taxed its value *if it had been transferred* becomes a moot question and unnecessary of decision. We have shown heretofore that the estate by the entirety held by decedent and his wife, prior to the former's death, was not transferred by his death to anyone. Since it was not so transferred, no tax is imposed by the statute in respect of it, and it becomes unnecessary to discuss its value or the power of Congress to predicate a tax on the inclusion of its value in the decedent's estate.

The statute imposes on this Board the duty of redetermining *de novo* the correct deficiency involved in any proceeding properly brought before it. If, in our opinion, the deficiency proposed to be collected by the Commissioner is not a correct and proper deficiency, we conceive it to be our duty to so determine. It is our opinion that the deficiency proposed here is not a correct or proper deficiency and we so hold.

> *Judgment will be entered for the petitioner after 15 days' notice, under Rule 50.*

MORRIS, STERNHAGEN, and MILLIKEN concur in the result only.

GREEN: I am able to concur in the result only. To me, it appears that the constitutionality of the Act is involved and should have been decided.

LOVE, dissenting: I do not agree with the argument used in the opinion in this case, nor do I agree with the conclusions of law announced therein.

The Revenue Acts of 1918, 1921, 1924, and 1926, prescribe that for estate-tax purposes, the gross estate of a decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible wherever situated. I

have found no theory advanced nor any opinion of a court holding that at the time of his death the decedent owned no property right in real estate held by him as tenant in the entirety. Having conceded that premise, it follows that the statute prescribes that the value of such property must be included in his gross estate. With slight variation in verbiage the acts above referred to specifically include in the gross estate any interest held by the decedent as tenant in the entirety.

Section 403 of the 1918 and 1921 Acts and section 303 of the 1924 and 1926 Acts prescribe that the net estate shall be determined by deducting from the value of the gross estate funeral expenses, administration expenses and certain claims against the estate. Hence, it is perfectly apparent that Congress intended that the value so obtained should be included in the net estate.

Sections 401 and 301 of the respective acts above referred to prescribe that:

A tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303 [403]) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this act.

It is therefore perfectly apparent that Congress intended to include such property in the net estate and burdened itself with special effort to so express that intent, and intended to levy a tax on it. To hold that the value of such property must be excluded from the gross estate or the net estate, or that it is not subject to estate tax is, to all intents and purposes, a holding that those acts are unconstitutional. I do not believe that they are unconstitutional. The Supreme Court has not so held. I fully understand the position taken, that is, let the value of that property go into gross estate; let it form a part of the net estate. But they contend that it is not transferred and that section 301 levies a tax only on the transfer.

It occurs to me that such a view restricts the import and use of the word "transfer" entirely too much. A transfer may be accomplished by operation of law. Did the surviving wife have anything after the death of her husband, which she did not have prior to his death? It is the recognized law of tenancy by entirety that neither spouse may alienate the property without being joined by the other. This lack of power to alienate any part of the property evidences beyond question the lack of a fee simple title in either spouse. The right and power to alienate is a *sine qua non* of a fee simple title. After the death of the husband, the wife may alienate the property, that is, by the death of the husband the fee simple title to the property passed to her.

It is the rule in most, if not all of the States that recognize tenancy by the entirety, that during coverture the husband and the

wife each is entitled to one-half the rents and profits coming from such real estate. After the death of one spouse, the survivor is entitled to the whole profits. In the event of dissolution of the marriage relation otherwise than by death, each is entitled to the property in proportion to contribution to purchase price. *Elliott* v. *Roll*, 226 S. W. 590. Briefly stated, the law governing tenancy by the entirety as applied by the courts of the several States where that tenancy is recognized is that, with respect to every incident of property ownership, save and except the right to alienate, the husband and the wife each, is treated as a separate entity. When they desire to alienate the property, the myth that was created by law, the myth of the idea of the oneness of husband and wife, must act by and through the joint action of both.

By the dissolution of the marriage relation the myth dies, and the title theretofore held by that myth passes, in the event of death, to the survivor, in the event of divorce, to each, in proportion to contribution to purchase price of the property. Does nothing pass at death of one spouse, by operation of law, to the survivor? Is nothing transferred? During coverture, where the husband and wife make separate income-tax returns, who returns the rents and profits from the real estate so held as tenants by the entirety? Will each be required to return the whole? Will either return the whole and the other return no part of same? If so, the one who suffers a loss will avail himself of that right in order to offset such profit against his loss. Will not each return one-half of such income? An affirmative answer to the last question is an irrefutable declaration that each in his own right as a separate entity owns and holds a half interest in that property, with all the incidents of property ownership except the right to alienate the same.

The legal myth holds the legal title to the fee. On the death of one spouse, the fee simple title passes, is transferred by operation of law from the myth to the survivor, and with the passing of that fee simple title there passes all the property rights theretofore held by the decedent, which property rights the statute demands shall be included in the gross estate and net estate of the decedent, and shall be subject to the estate tax.

I realize the fact that the few decisions, directly in point, that have been handed down by our courts are, seemingly, against my theory and contentions, but the Supreme Court has not yet passed upon this question and, until that court finally determines the controversy, I feel that I am justified in recording my views.

I desire also to state that I have purposely refrained from burdening this opinion with a citation of authorities. Every individual proposition of law announced herein is amply supported by

court decisions. It is only the final conclusion of law that is not supported by such decisions.

I believe the determination of the Commissioner should be approved.