## OTTO F. STIFEL'S UNION BREWING COMPANY, Appellant, v. EDWARD SAXY et ux.

### Division Two, February 16, 1918.

1. **ESTATE BY ENTIRETY.** The husband and wife take and hold an estate by the entirety, not as separate individuals and by moeities, but as one person, each holding the whole of it. They are neither joint tenants nor tenants in common; but for the purpose of holding the title, they are a unit, and upon the death of either the entire estate belongs to the survivor. At no time during their lives is it divisible, or subject to partition or sale for the sole debts of one of them, nor can either sell any interest in it without the consent and joint act of the other.

2. **JUS UXORIS: Husband's Possession: Married Woman's Act.** The husband, *jure uxoris*, prior to the Married Woman's Act of 1889, had the right to the possession of the wife's lands, including lands held by him and her as estates by the entirety, but those acts took that interest away from him, but did not destroy es-

tates by the entirety. They did not destroy the unity of husband and wife, which is the basis of estates by the entirety, but they were meant to destroy the unity of unequals, which was the basis of the *jus mariti*, by which the husband, as a marital right, was entitled to the possession and enjoyment of his wife's lands, unless she had a separate estate therein.

3. **ESTATE BY ENTIRETY:** Sale Under Execution. A judgment against the husband alone, in which the wife is not included, cannot in any way affect an estate by the entirety held by them in land and created since the Married Woman's Acts became effective, nor can an execution thereon affect any supposed separate interest of the husband in the land, for he has no separate interest. The husband, during their joint lives, has no interest in land held by him and his wife as tenants by the entirety that can be sold for his sole debts. [Authorities elaborately reviewed, and Hall v. Stephens, 65 Mo. 670, and Bains v. Bullock, 129 Mo. 117, analyzed and distinguished.]

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*Henry E. Haas* and *John A. Gilliam* for appellant.

(1) It is wholly immaterial whether the Theodosia Avenue property was, or was not, purchased with the separate means of the defendant Mary M. Saxy. At the time plaintiff's debt was contracted the record title of the property stood in the joint names of Mary M. Saxy and Edward Saxy, her husband, as tenants by the entirety. The general rule is that a wife who permits her husband to hold the record title to her realty is estopped to assert her title thereto as against one extending credit to the husband in reliance on his apparent ownership. 33 Ann. Cases (1914 C), 1066; Goldberg v. Parker, 87 Conn. 99, 33 Ann. Cases, 1059, with note; Riley v. Vaughan, 116 Mo. 169; McClain v. Abshire, 63 Mo. App. 333; Rieschick v. Klingelhoefer, 91 Mo. App. 430; Cottrell v. Spiess, 23 Mo. App. 35; Million v. Bank, 159 Mo. App. 601; Singer Mfg. Co. v. Stephens, 169 Mo. 1; Balz v. Nelson, 171 Mo. 682; Zehnder v. Stark, 248 Mo. 55; 1 Moore on Fraudulent

Conveyances, pp. 372, 404; 14 Am. & Eng. Ency. Law
(2 Ed.), 259.  (2) The interest of the defendant Edward
Saxy, in and to the Theodosia Avenue property, as ten-
ant by the entirety, was subject to sale under execution,
but the title of the purchaser was liable to be defeated
by the survivorship of the wife.  Hall v. Stephens, 65
Mo. 670; Morrow v. Zane, 185 Mo. App. 118; John-
ston v. Johnston, 173 Mo. 114; Nold v. Ozenberger, 152
Mo. App. 444; Atkison v. Henry, 80 Mo. 153; Hoff-
man v. Nolte, 127 Mo. 136.

*John B. Dempsey* and *Rozier G. Meigs* for respond-
ents.

ROY, C. —The plaintiff seeks herein to subject an
alleged interest of defendant Edward Saxy in real
estate standing in the name of his wife, the defendant
Mary M. Saxy, to the payment of a judgment debt due
to it from the husband.  There was a decree for de-
fendants, and plaintiff has appealed.

On September 3, 1891, certain real estate in St.
Louis was conveyed to the defendants, they being then,
as now, husband and wife, and taking said property as
tenants by the entireties.  In 1905, while the property
was so held, the husband became indebted to the plain-
tiff.  Thereafter, through an intermediary, the title
was placed in the wife alone; and, still later, the prop-
erty was sold, and the net proceeds were used in the
purchase of the real estate now in controversy.  The
petition alleges that the title to both of said tracts was
so placed in the wife alone in fraud of plaintiff's
rights as such creditor, and prays that the husband's
interest in the last mentioned tract be subjected to the
payment of plaintiff's judgment.

The question as to whether an execution against
the husband alone can reach any interest of any kind
in property held by the husband and wife as
tenants by the entirety has never been be-
fore this court.  There are some dicta on the
subject, which we will consider after a review of the

Estate by
Entirety.

273 Mo.—11

common law and the decisions of other jurisdictions. The conflicting opinions in the decided cases, and the various reasons given therefor, convince us that no safe conclusion can be reached without a clear perception of what such an estate was at common law, and the effect of the statutes known as the ''Married Woman's Acts'' on such estates.

We will first endeavor to ascertain what an estate by the entirety was at common law, leaving out of view the effect on such estate of the power of the husband in the right of the wife (*jure uxoris* ) to dominate her property. The estate was peculiar (Hall v. Stephens, 65 Mo. 670), and partook, in many respects, of the nature of the marriage relation. Husband and wife took and held it not as separate individuals and by moieties, but as one person, each holding the whole of it. [Stewart on Husband and Wife, sec. 303; 4 Kent, 362.] The English Court of Chancery, in Jupp v. Buckwell, L. R. 39 Ch. Div. 148, quotes Coke and Bracton as saying that in such an estate, *''vir et uxor sunt quasi unica persona, quia caro una et sanguis unus.''* That is a plain statement that they are one person because ''they are one flesh and one blood.''

2 Blackstone (Lewis's Ed.), p. 182, says:

''And therefore, if an estate in fee be given to a man and his wife, they are neither properly joint-tenants, nor tenants in common; for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my;* the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.''

Warvelle on Real Property, sec. 111, says:

''It differs from the estate of joint-tenancy in that joint tenants take by moieties and at the same time are each seized of an undivided part of the whole. In the estate by entirety neither tenant is seized of a part, or moiety, but both of them have the entire estate, and as this involves in itself a physical impossibility in the

case of ordinary individuals it necessarily follows that effect can only be given to the grant by regarding both tenants as constituting but one person. But this, in fact, is just what the law does, and as this unity of person is never recognized save in the case of husband and wife, the estate by entirety is confined exclusively to persons within the marriage relation."

There was incident to this estate the right of survivorship. But such survivorship was very different from survivorship in case of joint tenancy. 2 Blackstone, p. 184, speaking of joint tenancy, says:

"This right of survivorship is called by our ancient authors the *jus accrescendi,* because the right upon the death of one joint-tenant accumulates and increases to the survivor."

Warvelle, supra, speaking of tenancy by the entirety, says (Sec. 111);

"Both would therefore be seized of the entire estate; neither could dispose of any part of same without the assent of the other, and upon the death of either the whole estate would remain in the survivor. In this latter respect while the right of survivorship gives to the estate an apparent resemblance to joint tenancy, it yet differs materially from joint tenancy, for the survivor succeeds to the whole not by the right of survivorship simply, as is the case with joint-tenants, but by virtue of the grant which vested the entire estate in each grantee, or, in contemplation of law, in one person with a dual body and consciousness."

Stewart says (Sec. 306): "On the death of either, the other has the whole estate, continuing alone his or her former holding, and not taking by survivorship in the sense that a surviving joint tenant does."

In Garner v. Jones, 52 Mo. 68, it was said:

"At common law a conveyance in fee to husband and wife, of real estate, created a tenancy by the entirety. But being one person in law, they took the estate as one person. Each being the owner of the entire estate; neither of whom had any separate or joint interest, but a unity or entirety of the whole. So if either

died the estate continued in the survivor, as it had existed before; an undivided unity or entirety. There was no survivorship as in joint tenancies, but a continuance of the estate in the survivor as it originally stood. The only change by death was in the person, not in the estate. Before death they both constituted one person holding the entire estate, and after the death of either the survivor remained as the only holder of the estate.''

In Thornton v. Thornton, 3 Randolph (Va.), 179, it is said: ''The husband and wife have the whole from the moment of conveyance to them, and the death of either cannot give the survivor more.'' [See also Cole Mfg. Co. v. Collier, 95 Tenn. 115; Kunz v. Kurtz, 8 Del. Ch. 1. c. 414.]

There could be no partition of such estate. [Warevelle on Real Prop., sec. 111; Stewart on Husband and Wife, sec. 306; 4 Kent, p. 362; 1 Washburn on Real Prop., sec. 913; Russell v. Russell, 122 Mo. 235.]

Neither could dispose of any interest in the estate without the other. Blackstone's language above cited is: ''Neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.'' Warvelle, as above quoted says: ''Neither could dispose of any part of the same without the assent of the other.'' 4 Kent, 362; says, ''Neither of them can alien so as to bind the other.''

Upon being divorced the parties cease to occupy the relation of tenants by the entirety. The dissolution of the marriage relation dissolves the tenancy by the entirety. [Russell v. Russell, 122 Mo. 235.]

It will be noticed that such an estate was based on the unity of husband and wife, they being considered in all respects as equals so far as that estate was concerned.

We will now consider the estate or right which the husband acquired *jure uxoris* in the property of Jus the wife, and its effect on the estate by the Uxoris. entirety.

1 Bishop on Laws of Married Women says: "Thus, as we have seen, the wife's money and chattels in possession pass by the marital right to the husband."

2 Kent, 130, says: "If the wife, at the time of the marriage, be seized of an estate of inheritance in land, the husband, upon the marriage, becomes seized of the freehold *jure uxoris,* and he takes the rents and profits during their joint lives."

Platt on Property Rights of Married Women, sec. 2, says: "The husband was entitled to the use during coverture of all the real estate acquired by the wife before and after marriage."

Stewart, in his work above cited, Section 146, says:

"At common law a husband holds during coverture in right of his wife, she being merged in him, all her lands in possession, and owns the rents and profits thereof absolutely. This is called his freehold estate *jure uxoris;* it is often said to be an estate for the joint lives of the husband and wife, but this is a mistake, as it terminates with absolute divorce. It differs from curtesy initiate in that it is a vested estate in possession; while curtesy initiate is a contingent future estate, it is independent of birth of issue, is held in right of the wife, and is not added to or diminished when curtesy initiate arises."

And in Section 306, speaking of estates by the entirety, he says:

"During coverture, the husband has at common law his estate *jure uxoris,* with the right to the rents and profits; he holds the property subject to his control, use and possession; only this estate for their joint lives can be aliened by him, or taken for his debts, or charged by him with a mechanic's lien."

In Hall v. Stephens, 65 Mo. 670, it was said concerning estates by the entirety:

"If, as already seen, the husband and wife became seized in entirety of the undivided one-seventh of the devised premises, the plaintiff is clearly entitled to a corresponding recovery of possession, if the husband had at the time of the sale, any interest therein sus-

ceptible to execution. The great current of author-
ity affirms such susceptibility; going only so far as
this, however, that if the wife survive her husband,
she, as such survivor, will be entitled to the whole.
This theory, that the husband is possessed of a vend-
ible interest, has for its basis that the husband, *jure
mariti,* is entitled to the possession and usufruct of the
wife's real estate during marriage, which right suffers
no diminution or abatement by reason of his own inter-
est in land whereof both his wife and himself are joint-
ly seized. [Ames v. Norman, 4 Sneed, 692; French v.
Mehan, 56 Pa. St. 286; Bennett v. Child, 19 Wis. 362;
Freeman, Co.-T. and Par., secs. 73-74; 1 Wash., R. P.
(4 Ed.), 672; Bishop, L. M. W. 622; Stoebler v. Knerr,
5 Watts (Pa.), 181.]''

In that case the estate vested prior to the taking
effect of the statute which destroyed the right of the
husband to the exclusive possession and control of the
land.

The proposition that the husband's right to control
during his life the entire estate held by the entirety was
by reason of the *jus mariti* was announced by the Eng-
lish court in Jupp v. Buckwell, supra; and that case
is cited with approval by the Canadian court in Re
Wilson and Toronto I. E. Light Co.; 20 Ont. 397.

As is said by Stewart, supra, this interest of the
husband *jure uxoris* in the wife's property is different
from the curtesy estate. The one is enjoyed during
the life of the wife, in her right (or wrong) and termi-
nates with her death; the other is enjoyed in possession
only after her death. It, like dower, is held by right of
the marriage, but not in right of the spouse.

We thus see that it was the marital right, and it
alone, which gave the husband the power to appropri-
ate absolutely the personal chattels of the wife, and
gave him a freehold estate for their joint lives in her
lands, including those held by them as tenants by the
entireties. Independent of that marital right he had
no interest in her property that he could himself dis-
pose of or that was vendible under an execution against

him alone, except his curtesy estate concerning which we will say nothing further. This freehold estate of the husband in the lands of the wife and in estates held by the entireties was based on the idea of the unity of husband and wife, but a very different kind of unity from that unity of equals above described. The estate of the husband *jure uxoris* had for its very foundation the idea that husband and wife were one because she was merged in him, and he held the rights of both, and could act for both regardless of her wishes.

We will now consider the effect of the legislation which is spoken of as the ''Married Woman's Acts.'' The verbiage of those acts varies in different States, in Canada and in England. Doubtless the results reached in some of the cases are by reason of some peculiar provision of the statute under consideration. For the purposes of this case we shall treat them all as being the same as ours unless some reason to the contrary appears.

In some states the estate by the entirety has been judicially repudiated. [Whittlesey v. Fuller, 11 Conn. 337; Miles v. Fisher, 10 Ohio, 1; Wilson v. Fleming, 13 Ohio, 68; Kerner v. McDonald, 60 Neb. 663.] In two states there are statutes which destroy the rule that a conveyance of land to husband and wife, of itself and without further provision, creates an estate by the entireties. [Bassler v. Rewodlinski, 130 Wis. 26; Wilson v. Wilson, 43 Minn. 398.] In the following states it is held that the Married Woman's Acts have in effect abolished such estates: Donegan v. Donegan, 103 Ala. 488; Robinson, Appellant, 88 Me. 17; Green v. Cannady, 77 S. C. 193; also in England, Jupp v. Buckwell, supra; and in Canada, Griffin v. Patterson, 45 U. C. Q. B. 536, l. c. 554. In others it is held that those acts have made husband and wife tenants in common with right of survivorship: Schulz v. Ziegler, 80 N. J. Eq. 199; Hiles v. Fisher, 144 N. Y. 306. Some States hold that such acts have had no effect on the husband's right in lands held by the entirety. [Pray v. Stebbins, 141 Mass. 219; Morrill v. Morrill, 138 Mich. 112.] In two states it is held

that those acts have resulted in depriving the husband's creditors of the right to affect the interest of the wife during the existence of the marriage relation; but they intimate that the right of the survivorship of the husband can be sold for his debts. [Cole Mfg. Co. v. Collier, 95 Tenn. 115; Simpson v. Biffle, 63 Ark. 289.]

All those cases which hold that such legislation has destroyed or changed estates by the entirety proceed on the theory that it has destroyed the unity of husband and wife. They overlook the plain facts that such acts are meant to destroy the unity of unequals, the foundation of the *jus mariti*, and to thereby restore to its full vigor the unity made up of equals, the foundation of the estate by entirety.

*Jus Mariti.*

The doctrine most numerously supported by the decided cases is best expressed in Diver v. Diver, 56 Pa. St. 106, by STRONG, J., who was afterwards a justice of the Supreme Court of the United States. He there says:

"But it is said the Act of 1848, by destroying the the legal unity of the husband and wife, has converted such an estate into a tenancy in common; that is that such a deed conveys a different estate from that which the same deed would have created if made prior to the passage of the act. To this we cannot assent. It mistakes alike the letter and the spirit of the statute, imputing to it a purpose never intended. The design of the Legislature was single. It was not to destroy the oneness of husband and wife, but to protect the wife's property, by removing it from under the dominion of the husband. To effectuate this object, she was enabled to own, use and enjoy her property, if hers before marriage, as fully after marriage as before. And the act declared that if her property accrued to her after marriage, it should be owned, used and enjoyed by her, as her own separate property, exempt from liability for the debts and engagements of her husband. All this had in view the enjoyment of that which is hers,

not the force and effect of the instrument by which an estate may be granted to her. It has nothing to do with the nature of the estate. The act does not operate upon rights accruing to her until after they have accrued. It takes such rights of property as it finds them, and regulates the enjoyment; that is, the enjoyment of the estate after it has vested in the wife. And the mode of authorized enjoyment is significant. It is to be as her separate property is enjoyed, as property settled to her separate use. The act therefore no more destroys her union with her husband than does a settlement of property for her separate use. To a certain extent she is enabled, but no more than is necessary, to protect her property after it has been acquired. We have held that she can convey her lands only by joining in a deed with her husband. [Pettit v. Fretz, 9 Casey, 118.] This is a clear recognition of the existing unity of the two. It need not be repeated that no greater effect is to be given to the Act of 1848 than its language and spirit demand. It is a remedial statute, and we construe it so as to suppress the mischief against which it was aimed, but not as altering the common law any further than is necessary to remove that mischief. To hold it as operating upon the deed conveying land to a wife, making such deed assure a different estate from what it would have assured without the act, is to lose sight of the legislative purpose. Were we to do so, it would become in many cases a means of divesting her of her property, instead of an instrument of protection. In the present case, if it has converted the estate granted to Diver and his wife into a tenancy in common, it has taken from her her ownership and enjoyment of the entirety during her husband's life and her right of survivorship to the whole. On this subject the remarks of Chief Justice Lewis in Stuckey v. Keefe's Executors, 2 Casey, 401, are worthy of attention.''

That language is a clear and irrefutable statement of the conclusion that the Married Woman's Acts are not intended to weaken or destroy that unity of husband

and wife which treats them as equals, but that they do destroy that unity of the two which considers the wife as merged in the husband. In other words, the purpose of such acts is to destroy the *jus mariti,* without affecting, in any other way, the estates granted to the wife alone, or to the husband and wife as tenants by the entirety. That doctrine has been indorsed in Kunz v. Kurtz, 8 Del. Ch. 405; Patton v. Rankin, 68 Ind. 245; Baker v. Stewart, 40 Kan. 442; Masterman v. Masterman, 129 Md. 167; Hood v. Mercer, 150 N. C. 699; Corinth v. Emery, 63 Vt. 505.

Thus we have seen that, at common law, and independently of the *jus mariti,* neither husband nor wife could, without the concurrence of the other, bind or dispose of any interest in the estate. They could not have partition. On the death of one, the other continued to own the whole estate. There was no increase of the estate as in case of the survivorship of a joint tenant. In Jordan v. Reynolds, 105 Md. 288, it was said:

"To hold the judgment to be a lien at all against the property, and the right of execution suspended during the life of the wife, and to be enforced on the death of the wife, would we think likewise encumber her estate, and be in contravention of the constitutional provision heretofore mentioned, protecting the wife's property from the husband's debts.

"It is clear, we think, if the judgment here is declared a lien, but suspended during the life of the wife and not enforceable until her death, if the husband should survive the wife, it will defeat the sale here made, by the husband and wife to the purchaser, and thereby make the wife's property liable for the debts of her husband."

Leaving out of view for the present the decisions of the courts of this State, we conclude that where a judgment and execution thereon are against a husband alone, not including the wife, such judgment and execution cannot affect in any way property held by them by the entirety, nor can it affect any supposed sep-

arate interest of the husband therein, for he has no separate interest.

We will now consider the decisions in this State.

In Gibson v. Zimmerman, 12 Mo. 385, it was said: "They are each the owner of the whole, but not of the half. They must both join in a conveyance. They are both necessary to make *one grantor.*" It was also there said: "And it is difficult to assign any good reason why survivorship between husband and wife is prejudicial to the commonwealth, or repugnant to the genius of republics."

<span style="float:left">Married Woman's Acts.</span>

The Legislature, by Section 2878, Revised Statutes 1909, expressly excepts a conveyance to husband and wife from the provision that a conveyance to two or more persons shall be a tenancy in common, unless expressly declared to be a joint tenancy.

In Hall v. Stephens, 65 Mo. 670, above cited, it was said that the power of the husband over land held by him and his wife by the entireties was not affected by the Married Woman's Acts. The only authority there cited was 4 Sneed (Tenn.), 692. There are three things to be said about Hall v. Stephens: 1, As we have above stated, only two states hold to that opinion, Massachusetts and Michigan. All the other courts of this country and of Canada and England, wherever they have spoken, have held that the Married Woman's Acts have destroyed the *jus mariti* in the estates by the entirety. 2, The opinion in Hall v. Stephens was a pure *dictum,* as the estate there vested before the date of the Married Woman's Acts. 3, The only case there cited has been repudiated as a *dictum* by the court of that state. [Cole Mfg. Co. v. Collier, 95 Tenn. 1. c. 123.]

The following cases were like Hall v. Stephens in that the estate vested before the statutes affecting the husband's right went into effect: Atkison v. Henry, 80 Mo. 151; Moses v. Dock Co., 84 Mo. 242; Wilson v. Albert, 89 Mo. 537; Bank v. Fry, 168 Mo. 492. In Johnston v. Johnston, 173 Mo. 1. c. 114, attention was called to the fact that Hall v. Stephens, was *obiter dictum* on the point here involved. In Bains v. Bullock, 129 Mo.

117, it was held that the Married Woman's Act of 1889, Secs. 6864 and 6869, Revised Statutes 1889, did affect the wife's right in the estate by the entirety, and that it enabled the wife, without joining the husband, to sue any person other than the husband for the possession of the land. That case did not determine what effect the statute had on the rights of the husband and wife as between themselves. But it does say (l. c. 120):

"But it is also true that the grant vests in each grantee the entire estate. The statute abolishes the legal unity between husband and wife, which gave rise to estates by the entirety, but the estate itself has not been abolished."

The question here involved was not in issue in that case, and the authorities were not there reviewed. We respectfully submit that if there had been such a review, it would not have been there said that "the statute abolishes the legal unity between husband and wife, which gave rise to the estate by the entirety." However, we have no special quarrel with that case. It holds, in effect at least, that such estate still exists, freed by the statute from the *jus mariti.*

VALLIANT, J., in Frost v. Frost, 200 Mo. 474, l. c. 483, said:

"Under the facts of the case at bar it is not necessary for us to decide whether or not under our married woman's statutes the husband has been shorn of the exclusive right to the possession and control of the property held as an estate in entirety; it is sufficient to say, as we do say, that the title in such an estate is as it was at common law; neither husband nor wife has an interest in the property, to the exclusion of the other; each owns the whole while both live and at the death of either the other continues to own the whole, freed from the claim of any one claiming under or through the deceased."

We hold that, as a result of the Married Woman's Acts, the husband, during their joint lives, has no interest in land held as tenants by the entirety that can

be sold under execution for the sole debt of the husband.

The decree of the trial court is affirmed.

*White, C.,* concurs.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.