## PETERS v. DONA, ET AL. (FIRST NATIONAL BANK OF GREEN RIVER, INTERVENER)

(No. 1927; February 18, 1936; 54 Pac. (2d) 817)

For the appellants the cause was submitted on the brief of *T. S. Taliaferro, Jr.* and *A. L. Taliaferro,* of Rock Springs, Wyoming.

For the respondent, Guy Dona, the cause was submitted on the brief of *W. A. Muir* and *Glen G. Stanton*, of Rock Springs.

312

RINER, Justice.

This case was commenced in the district court of Sweetwater County, and the action seems to have been one somewhat in the nature of a suit to quiet title and remove a cloud therefrom as against an alleged improper mechanic's lien filed in the office of the County Clerk of said County, relative to certain property situated in the Town of Green River, Wyoming. A judgment was rendered in the action by the court aforesaid adverse to Ernest Peters, Miriam Peters and the First National Bank of Green River, Wyoming, and they have brought the record here for review by direct appeal.

A disposition of the case requires consideration of the following facts: Under date of September 6, 1930, by warranty deed, there was conveyed by John Hutton and wife to "Ernest R. and Miriam Peters, husband and wife," certain real estate described as "North Seventy (70') Feet of Lot numbered Four (4) in Block numbered Thirty-six (36) in the Union Pacific Railway Company's First Addition to the Town of Green River, Wyoming, as said lot is laid down and described on the duly recorded plat of said Addition, situate in the County of Swetwater, State of Wyoming." The property appears to have been paid for by the joint funds of both Peters and his wife. About September 29, 1930, the parties last mentioned made a contract with one Elmer Wahlstrom for the erection of a house on said real estate, and Wahlstrom employed a subcontractor, Guy Dona by name, to do required excava-

tion, trucking and concrete work in the course of the erection of the building. Dona's account for what he did and furnished in the matter totaled $467.79, the last item being furnished December 15, 1930. The house was completed by the 31st of that month, and Mr. and Mrs. Peters moved into it on that date.

Wahlstrom failed to pay Dona, and accordingly, on February 20, 1931, Dona filed a statement, under the Mechanic's Lien Law of Wyoming, in the County Clerk's office aforesaid claiming a lien upon these premises in the sum above mentioned. This statement named Ernest Peters alone as the owner of the property affected, and recited among other things that on the 4th day of February, 1931, "the said Ernest Peters was given notice in writing that the said Guy Dona held a claim against said building and improvements, stating in said notice the amount of the same, and from whom it was due, and that said Ernest Peters has received notice as required by law, ten days before the filing of this lien."

March 31, 1931, the warranty deed from Hutton and wife to Ernest Peters and Miriam Peters was placed of record in the office of the County Clerk of Sweetwater County.

April 17, 1931, Ernest Peters began the action already referred to, making the lien claimant Dona and Helen Young Hamm, the County Clerk of Sweetwater County, defendants, and praying that an order be made striking said lien statement from the files of the County Clerk's office and declaring it void. To this petition Dona filed, on May 15, 1931, his separate answer and cross-petition, seeking a foreclosure of his alleged lien upon the property aforesaid against Ernest Peters only. Under date of June 9, 1931, Peters and his wife gave a mortgage upon the real estate in question to the First National Bank of Green River, Wyoming, to

secure the payment of $1700, and this instrument was duly recorded in Sweetwater County on June 18, 1931. By an order of the district court dated August 3, 1933, and filed the following day, the defendant, Guy Dona, was "permitted to make Elmer Wahlstrom, the original contractor, a party defendant to this suit, and that he be duly summoned to answer the cross-petition of defendant, Guy Dona." Wahlstrom's subsequent motion to quash service upon him was by court order of December 5, 1933, denied, and he was given time to plead. Nothing further seems to have been done by him or against him in the case. The First National Bank of Green River, on January 5, 1934, filed in the case its petition to intervene, setting up and relying on the mortgage already described and other matters not necessary to mention now. By a supplemental petition filed January 19, 1934, the Bank aforesaid alleged the fact that the real estate involved was held by Ernest Peters and Miriam Peters, his wife, in an estate by entireties, and alleged that Dona never notified Miriam Peters of his intention to file a lien on said property and never named or referred to her in the lien statement aforesaid, and that the Bank had no notice that Dona claimed any interest in said real estate adverse to the said Miriam Peters when it loaned the money and accepted the mortgage aforesaid. Thereafter, on motion of Dona and by order, excepted to by the plaintiff, which was dated May 26 and filed May 29, 1934, the district court directed that Miriam Peters be made a party to the suit as a defendant to the cross-petition of Dona, in case she failed to join her husband as plaintiff.

On June 4, 1934, more than three years and three months after the lien statement of Dona had been filed, as above recited, the latter filed his amended separate answer and amended cross-petition, wherein Miriam Peters was for the first time named as a

party to the suit. Her general demurrer to the last mentioned pleading of the lien claimant was filed July 11, 1934, and it being overruled, on December 14, 1934, she filed her separate reply to said pleading. This reply, among other things, alleged the failure of Dona to make her a party to the litigation until after the lapse of more than three years from the date of the filing of his lien statement, his failure to give her any notice of his intention to file a mechanic's lien against her property, and also the fact that she was not named at all in said statement. The case was tried to the court without a jury and the judgment entered found generally in favor of the lien claimant against the several parties who have brought this appeal; that there was due Dona from Ernest Peters and his wife, Miriam Peters, the amount claimed by Dona in his lien statement, with interest; that Ernest Peters and Miriam Peters were at all the times referred to in the lien claimant's pleading the owners of the property aforesaid, and that his asserted lien upon said premises was valid and enforceable. It was adjudged that Dona do have and recover the sum of $599.00 and stated costs from Ernest Peters and Miriam Peters, his wife; that the lien claimed by him be foreclosed as an encumbrance prior to that of the mortgage of the intervener, the First National Bank of Green River, Wyoming, and that upon the sale of the property and confirmation thereof by the court, Peters and his wife, and all persons claiming under them, be barred of all right to the possession of the premises so sold. The appealing parties reserved their several exceptions to this judgment.

A number of questions said to arise upon the record here have been discussed by the briefs in the case, but we deem it necessary to consider but one, viz.,— whether, as urged by appellants, any serious consequences flow from the lien claimant's failure to make

Miriam Peters a party to the suit sooner than he did. Our attention is directed by appellants to the fact that the property here affected was conveyed by grantors in September, 1930, to "Ernest R. and Miriam Peters, husband and wife," thereby, as appellants say, creating them owners of the property as tenants of an estate in its entirety.

"A conveyance or devise to two persons, who are husband and wife at the time property vests in them," says 2 Thompson on Real Property, 939, Section 1735, "creates an estate by entireties. By reason of their legal unity by marriage, they together take the whole estate as one person. Neither has a separate estate or interest in the land, but each has the whole estate. Upon the death of one the entire estate and interest belongs to the other, not by virtue of survivorship, but by virtue of the title that vested under the original limitation." So 30 C. J. 570, Section 105, states that, "Where real property is held as an estate by the entirety and one spouse dies, the surviving spouse retains the whole estate as sole owner. The effect of the death of one spouse is merely to free the estate from participation by that spouse. The survivor takes by virtue of the original grant or devise; he does not take a new or additional interest by virtue of survivorship, nor does he take by descent or intestate succession." In 13 R. C. L. 1108, Section 130, it is said:

"The unities of time, title, interest and possession must be observed in creating a tenancy by the entireties. So in order to create a tenancy by the entireties the husband and wife must take by one and the same instruments; they cannot take by entireties when they take the estate at different times,—as, when a person who holds jointly or in common with one of the spouses conveys his interest to the other."

Tenancy by the entirety, arising from a conveyance to husband and wife, would seem not to be destroyed

by the legislation of the several states which secure to the wife the enjoyment of her separate property, according to the better and prevailing opinion in this country. 13 R. C. L. 1101, § 124; 2 Thompson on Real Property 952, § 1747; 30 C. J. 567, § 101.

In Diver v. Diver, 56 Pa. 106, one of the earliest cases which gave consideration to the matter, Judge Strong, subsequently a Justice of the Supreme Court of the United States, said:

"But it is said the Act of 1848, by destroying the legal unity of the husband and wife, has converted such an estate into a tenancy in common; that is, that such a deed conveys a different estate from that which the same deed would have created, if made prior to the passage of the Act. To this we cannot assent. It mistakes alike the letter and the spirit of the statute, imputing to it a purpose never intended. The design of the legislature was single. It was not to destroy the oneness of husband and wife, but to protect the wife's property, by removing it from under the dominion of the husband. To effectuate this object, she was enabled to own, use and enjoy her property, if hers before marriage, as fully after marriage as before. * * * It need not be repeated that no greater effect is to be given to the Act of 1848 than its language and spirit demand. It is a remedial statute, and we construe it so as to suppress the mischief against which it is aimed, but not as altering the common law further than is necessary to remove that mischief. To hold it as operating upon the deed conveying land to a wife, making such deed assure a different estate from what it would have assured without the act, is to lose sight of the legislative purpose. Were we to do so, it would become in many cases a means of divesting her of her property, instead of an instrument of protection."

Quoting at length from the decision last cited, the Supreme Court of Missouri in Otto F. Stifel's Union Brewing Co. v. Saxy, 273 Mo. 159, 201 S. W. 67, remarked:

"That language is a clear and irrefutable statement of the conclusion that the married women's acts are not intended to weaken or destroy that unity of husband and wife which treats them as equals, but that they do destroy that unity of the two which considers the wife as merged in the husband. In other words, the purpose of such acts is to destroy the jus mariti, without affecting, in any other way, the estates granted to the wife alone, or to the husband and wife as tenants by the entireties."

After a careful review of the authorities that Court announced that:

"We conclude that where a judgment and execution thereon are against a husband alone, not including the wife, such judgment and execution cannot affect in any way property held by them by the entireties, nor can it affect any supposed separate interest of the husband therein, for he has no separate interest."

This decision was followed by the case of Ashbaugh v. Ashbaugh, 273 Mo. 535, 201 S. W. 72, wherein the same result was reached. Many other subsequent cases from the same jurisdiction might readily be cited to the same effect. In Licker v. Gluskin, 265 Mass. 403, 164 N. E. 613, decided in 1929, it was affirmed that statutes according to a married woman the right to receive, hold, manage and dispose of real and personal property in the same manner as if she were sole, were inapplicable to an estate by entireties held by husband and wife, and the court decided that the interest of a wife in real estate held by her husband and herself as tenants by entirety, could not during their joint lives be attached by a creditor of the wife, since the creditor could not accomplish that which the wife alone could not accomplish, i. e., alien the property. Citing cases from other jurisdictions, the court stated: "The result here reached, however, is in harmony with what is deemed to be the prevailing trend of authority elsewhere."

The first Section of the Article in the Wyoming Revised Statutes, 1931, concerning mechanics' and builders' liens, Section 66-501, reads in part:

"Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engines, boilers or machinery for any building, erection or improvement upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, trustee, contractor, or sub-contractor, upon complying with the provisions of this article, shall have for his work, or labor done, or materials, fixtures, boiler or machinery furnished, a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated."

Relative to parties in mechanic's lien foreclosure suits, Section 66-512 W. R. S., 1931, provides:

"In all suits under this article the parties to the controversy shall, and all other persons interested in the matter in controversy, and in the property charged in the lien, may be made parties, but such as are not made parties shall not be bound by any such proceeding, and constructive service may be had upon any defendant in suits brought under this article who may be non-residents of the state and cannot be personally served with the summons within the state in the same manner as constructive service is had in. other cases at law."

And concerning the duration of the lien in such matters, Section 66-518, W. R. S. 1931, prescribes:

"All actions under this article shall be commenced within six months after the filing of the lien, and prosecuted without delay to final judgement, and no lien shall continue to exist by virtue of the provisions of this article for more than six months after the lien shall be filed, unless within that time an action shall be instituted thereon, as hereinbefore described."

Defining the words "owner" and "proprietor" as used in the mechanics' lien law, Section 66-523, W. R. S. 1931, say that:

"Every person for whose immediate use, enjoyment or benefit any building, erection or improvements shall be made, shall be included by the word 'owner' or 'proprietor' thereof, under this chapter, not excepting such as may be minors over the age of eighteen years, and married women; and in case the husband of any married woman shall enter into any contract for the performance of any work, or the furnishing of any material, for which a lien is provided by this chapter for the benefit of the wife's property, the husband so contracting shall be deemed prima facie to be the agent of his wife owning such property."

In Wyman v. Quayle, 9 Wyo. 326, 63 Pac. 988, this Court declared:

"The lien is exclusively a creature of statute, deriving its existence only from positive enactment. It is a remedy given by law, which secures the preference provided for, but which does not exist, however equitable the claim may be, unless the party brings himself within the provisions of the statute, and shows a substantial compliance with all its essential requirements. Phillips on Mechanics' Liens, Sec. 9. The act in question declares that the persons designated shall have a lien upon complying with the provisions of the chapter."

And in that case and subsequent cases, Big Horn Lumber Co. v. Davis, 14 Wyo. 455, 84 Pac. 900; Becker v. Hooper, 23 Wyo. 209, 147 Pac. 1085, it was pointed out that "our mechanics' lien law was taken substantially from the statutes of Missouri upon the subject." The decisions of the courts of that state are accordingly of assistance, as they shed light upon the problems arising under our law.

The effect to be given the language of Section 66-523, supra, is indicated in Ward v. Nolde, 259 Mo. 285, 168 S. W. 596, where it was said:

"The phrase 'for whose immediate use, enjoyment or benefit any building, erection or improvement shall be made' is not intended as a limitation upon the person who is an 'owner' as that word is ordinarily understood, but the phrase is undoubtedly used to include persons who would not be considered owners in the ordinary acceptance of that term. In other words, the use of the phrase in the statute is for the purpose of enlarging rather than that of limiting the ordinary definition of the word 'owner.' "

In Becker v. Hopper, supra, it was stated that: "If the owner of the property is not made a party in an action to enforce a mechanics' lien no judgement can be rendered which will bind him or the property." It is obvious that the purpose of foreclosing a mechanic's lien is to bind the property of the owner whose premises have been improved by the labor or materials furnished by the lien claimant for that purpose. Accordingly it is established by the weight of authority and as intimated by Judge Potter in the quotation from Becker v. Hopper, supra, that the owner of the property against which a mechanic's lien is sought to be foreclosed is, of course, a necessary party. 40 C. J. 399; Ann. Cases 1918B, Page 11, Note.

It follows, also, from the plain language of Section 66-518, supra, that unless a suit to foreclose the lien is instituted within six months, against the owner of the premises, as defined by Section 66-523, supra, the lien lapses and the court is without jurisdiction to proceed with the foreclosure. The following authorities confirm this conclusion.

In Badger Lumber Co. v. Staley, 141 Mo. App. 295, 125 S. W. 779, several defendants who had an interest in the property sought to be made subject to the lien, after having been made parties, were voluntarily dismissed from the suit by the plaintiff. After the ninety day period fixed by the law of Missouri for the dura-

tion of the lien had expired, the plaintiff again sought to bring them back in the case. Holding this could not be done and that no judgement could be rendered against them, the court used this language:

"Section 4218, Revised Statutes 1899, provides: 'All actions under this article shall be commenced within ninety days after filing the lien, and prosecuted without unnecessary delay to final judgement; and no lien shall continue to exist, by virtue of the provisions of this article, for more than ninety days after the lien shall be filed, unless within that time an action shall be instituted therein, as hereinbefore prescribed.'

"The right to mechanic's lien is purely statutory, and while the rule is well established that the statutes giving the right are to be liberally construed, the right itself cannot be enlarged beyond the reasonable scope of the statute. We agree with what was said by the St. Louis Court of Appeals in Fury v. Boeckler, 6 Mo. App. 24: 'The proceeding is special, and the person who claims under it must bring himself within its special provisions. The ninety days after which no lien is to continue to exist unless the conditions of the law are complied with are not provided as a period of repose, to bar actions; on the contrary, they are a limit to the existence of the lien.'

"If the plaintiff fail to bring his suit within ninety days after filing of the lien, his lien is lost and it may be considered as settled in this and other jurisdictions that the lien is preserved beyond the period of ninety days only as to those parties who are made defendants in a suit brought within that period. After its expiration new parties cannot be introduced by an amendment to the petition. (Lumber Co. v. Wright, 114 Mo. 326; Smith v. Barrett, 41 Mo. App. 460; Bombeck v. Devorss, 19 Mo. App. 38; Jaicks v. Sullivan, 128 Mo. 177; St. Joseph v. Baker, 86 Mo. App. 310; Forrey v. Holmes, 65 Mo. App. 114; Eyermann v. Scollay, 16 Mo. App. 498;Boisat on Mechanic's Liens, sec. 577; Sutton v. Dameron, 100 Mo. 141; Dunphy v. Riddle, 86 Ill. 22; Crowl v. Nagel, 86 Ill. 437; Union Nat'l Assn. v. Helberg, 152 Ind. 139.)"

Where an action was brought to enfore a mechanic's lien for work and labor done and materials furnished for thirteen brick buildings and the lots of ground upon which they were situated, and the owner of one of these lots was not made a party defendant until the expiration of more than ninety days after the lien statement had been filed, the court in Hiller v. Schulte, 184 Mo. App. 42, 167 S. W. 461, reversed a judgement against such owner, saying:

"It is perfectly clear that the suit was not begun as to Florence M. Dale within ninety days after the filing of the lien as required by section 8228, Revised Statutes 1909. The action was instituted within the prescribed ninety days, to-wit, on September 13, 1906; but Florence M. Dale was not made a party thereto until March 17, 1909, about two and one-half years thereafter. And it is well settled that, where parties are thus brought in by an amendment, the suit as to them is begun at the time of such amendment making them parties. The amended petition as to them is the filing of a new suit. And, as an action to enforce a mechanic's lien must be brought within ninety days after the filing of the lien, after the lapse of that time new parties cannot be brought in by amendment and be thus affected by the proceeding." (Citing many cases and authorities.)

In Redlon v. Badger Lumber Co., 194 Mo. App. 650, 189 S. W. 589, the court considered the duty of the lien claimant to make a mortgage of the premises a party defendant in apt time, and said:

"Without doubt, it is incumbent upon every lien claimant, suing to establish a mechanic's lien, to make the mortagee a party to the suit if the claimant desires to bind the interest of the mortgagee. Aside from any statute, the ordinary principles of law would seem to require this. In addition thereto, section 8228, Revised Statutes 1909, of the Mechanic's Lien Law requires such suit to be brought in ninety days, and section 8221 provides that, in suits to establish such liens, all persons interested in the property charged with the

lien may be parties, and, if they are not, they 'shall not be bound thereby." Whatever may have been thought at one time concerning the meaning of this statute, it is now well established that, at least as to anyone having any interest in the property, the suit must be brought against him in ninety days, and, if not so brought, the lien is void as to him. And, of course, if he is not a party to the suit the judgment is a nullity as to him. (Russell v. Grant, 122 Mo. 161; Landau v. Cottrill, 159 Mo. 308.) And in this regard a mortgagee is to be regarded as interested in the property the same as the owner. ((Riverside Lumber Co. v. Schafer, 251 Mo. 539. l. c. 552.) There would seem, then, to be no question but that if the lien claimant desires to bind the interest of the mortgagee, the latter must be made a party within the ninety days and before judgment is obtained. And the lien claimant must do this without regard to whether the lien takes precedence over the mortgage or not, because the validity of his lien is not established until the judgment is rendered."

Discussing the foreclosure of mechanic's liens and citing many cases on the point, in 40 C. J. 394, the law is thus set forth:

"Where the owner or an encumbrancer or other person acquiring an interest in the property which cannot be affected by the foreclosure proceeding in his absence from the record is originally omitted and thereafter brought in by amendment, the statutory bar will operate in his favor if the period expired before the date of the amendment because as to him the suit is commenced at the date of the amendment making him a party."

The statute of Alabama, relating to the duration of a mechanic's lien, enacted that: "Except in cases hereinafter provided, all liens arising under this article shall be deemed lost, unless suit for the enforcement thereof is commenced within six months after the maturity of the entire indebtedness secured thereby." (Section 4777 Code of Alabama, 1907.)) Where the

assignee of a mortgagee of certain property was not made a party to an original bill to foreclose a mechanic's lien, although the deed from the mortgagee to her was filed of record and complainant thereby knew all the facts relative to her interest in the property prior to the expiration of the sixth month after the maturity of the indebtedness involved, in Sorsby v. Woodlawn Lumber Co., 202 Ala. 566, 81 So. 68, the court held she could not be brought in as a defendant thereafter by amendment of the bill, and on this matter said:

"Mrs. Sorsby is the only one to defend or represent the property sought to be affected by this lien. As held on former appeal, no relief was sought against her or her property by the bill, or any one of its first eight amendments; and it was only amended after the reversal, so as to ask relief against her, her property, or her deed. Until this last amendment, there was no need to plead or demur, as was held on former appeal. So she was not called on by this complaint to defend against the asserted lien upon her property until 4 years after the debt accrued. That she was not sooner made a party and required to defend was the fault of complainant—certainly so after her deed was filed of record and complainant knew all the facts. This was in ample time to have made her a party within 6 months as required by the statute. Section 4777 of the Code.

"The mere fact that the original bill, to which she was not a party was filed within 6 months, or the time required by the statute, cannot serve to make this amended bill against her in time. The amendment making her a party, and seeking to enforce the lien against her property, cannot be made to relate back to the time of filing the original bill."

Of similar purport is the case of Anderson v. Dade Lumber Co., 101 Fla. 38, 133 So. 321.

In Fleshman v. Whiteside, 148 Ore. 73, 34 Pac. (2d) 648, 93 A. L. R. 1456, the mechanic's lien law of Oregon provided:

"No lien provided for in this act shall bind any building, structure, or other improvement for a longer period than six months after the same shall have been filed unless suit be brought in a proper court within that time to enforce the same; or if a credit be given, then six months after the expiration of such credit; but no lien shall be continued in force for a longer time than two years from the time the work is completed by any agreement to give credit." (Sec. 51-107 Ore. Code 1930.)

The plaintiff did not bring his suit against the defendants to foreclose the liens within the six months period. The defendants did not either by demurrer or by answer raise the point of his failure so to do. On the trial, however, they contended that the liens had lapsed. The plaintiff insisted that the law above quoted was a statute of limitation and that defendants waived its benefit by raising the question for the first time during trial. Holding adversely to plaintiff's view, the court cited numerous authorities and quoted with approval from the decision of the Supreme Court of Washington in Peterson v. Dillon, 27 Wash. 78, 67 Pac. 397, 400, where this was said:

" 'The statute creates and limits the duration of the lien. When the limit fixed by the statute for the duration of the lien is passed, no lien exists, any more than if it had never been created. The statute gives jurisdiction to the court to foreclose a lien on certain conditions,—the filing of a lien notice, and the commencement of the action within eight months (the Washington statute) after such notice is filed. If these things are not done, no jurisdiction exists in the court to foreclose the lien. In ordinary actions the jurisdiction exists to entertain same, and render judgment thereon, and in case of default the court can pronounce such judgment as the facts warrant, as the court's jurisdiction does not depend upon the time in which the action is brought. In suits to foreclose mechanic's liens the jurisdiction does depend upon the time in which the action is brought.' "

Reviewing the authorities cited by plaintiff in support of his contention, among which were American Radiator Co. v. Conner Plumbing & Heating Co., 277 Mo. 548, 211 S. W. 56, the Oregon court remarks: "The foregoing cases relied upon by plaintiff are contrary to the great weight of authority on this subject, and should not be followed in the construction of our own statute." We are inclined to think that the reasoning adopted by the Oregon and Washington courts is sound.

In addition to the authorities already cited concerning the status of property held by husband and wife in an estate by entirety, the following decisions are instructive and helpful.

Where a lien for special assessments on account of street improvements was undertaken to be foreclosed, in City of Laclede to Use of Abell v. Libby, 221 Mo. App. 703, 285 S. W. 178, there was said concerning the matter in which we are here interested:

"Finally, it is urged that there is a fatal defect in the parties defendant. The petition alleges the ownership of the lots in O. F| Libby, while the evidence shows that the lots sought to be charged with the special tax bill are of record in the name of Oscar F. Libby, (defendant herein) and Rebecca J. Libby, husband and wife; thus establishing an estate by the entirety. It is the law that holders of an estate by the entirety do not hold separate title which can be sold by either, or seized on execution for the debts of one of them. There is no separate estate in the land. Brewing Co. v. Saxy, 273 Mo. 159, 201 S. W. 67, L. R. A. 1918C, 1009. As only one of the owners by the entirety of the lots in question is made party defendant, and the petition seeks to impress the said lots with a lien, it is clear that both of the record owners of the property should have been made parties to the proceeding.. Excelsior Springs v. Henry, 99 Mo. App. 450, 73 S. W. 944. This point was pleaded in the answer and saved in the motion for a new trial. Under the law, we must

hold that the trial court erred in overruling defendant's motion for a new trial."

The case of Lallevich v. Bartoszewiz, 205 Mich. 375, 171 N. W. 351, was one where the plaintiff filed his bill to foreclose a mechanic's lien. The claim of lien undertaken to be foreclosed named only the defendant, A. J. Banacky, as the owner of the property. As a matter of fact, he and his wife, Mathilda, were the owners of the property as an estate by the entirety. The law of Michigan (Sec. 14800, 3 Comp. Laws 1915) requires the lien statement filed to contain among other data, "the name of the owner, part owner or lessee, if known." Affirming a decree dismissing the bill, the court stated the contentions of the parties and its conclusions thus:

"It is the contention of the appellees, it being so held by the trial court, that this statute was not complied with, in that the claim of the lien simply stated A. J. Banacky as the owner of the property and did not state the name of the 'owner, part owner or lessee, if known.' It is urged by counsel for the appellant that, notwithstanding this is true, the purpose of the statute was complied with, as both Aloys J. Mathilda Banacky, husband and wife, were each personally served with a copy of the plaintiff's claim of lien.

"Both Mr. and Mrs. Banacky owned the whole property against which the lien was claimed, and therefore it follows that it cannot be claimed that the owner was named in the claim of lien, as required by the statute." To the same effect is the case of Grand River Lumber & Coal Co. v. Glenn, 234 Mich. 310, 207 N. W. 855.

In I. R. Goldberg Plumbing Supply Co. v. Taylor, 209 Mo. App. 98, 237 S. W. 900, it appeared that a husband and a wife held certain premises as tenants by the entirety. The husband, his wife not consenting, made a contract with one Wood for the installation of a heating plant on this property. Plaintiff furnished the ma-

terials for the heating plant under contract with Wood. On the trial of the mechanic's foreclosure suit, judgment went against the plaintiff, and he appealed from that part of the judgment releasing the husband. Said the court:

"The sole question raised here is whether the defendant John E. Taylor had such an interest in the premises in question as could be subjected to a mechanic's lien judgment and sold under execution issued thereon.

"At common law in estates held by the entirety the husband was entitled to the rents and profits of the premises during the joint lives of himself and wife, and upon the death of either, by virtue of the grant which vested the entire estate in each grantee, the survivor succeeded to the whole estate. This right to the possession and usufruct of the wife's real estate did not flow from the unity of the estate, but was given the husband as his marital right (jus mariti). It was a vendible interest, but his interest in the estate by the entirety could not be aliened during the joint lives of himself and wife without the concurrence of the wife.

"The Married Woman's Act of 1889 (sections 6864 and 6869, Missouri Revised Statutes of 1889) deprived the husband of his right to the use and possession of his wife's real estate; so that the jus mariti in the estate by the entirety no longer exists in this state. But said act did not affect the title in said estate, but left it as it was at common law. Both husband and wife are seized of the entirety; neither can sever the union of interest without the concurrence of the other; each and both own the whole estate during their joint lives, and upon the death of either the survivor continues to own the whole estate; each is seized of an indivisible entirety; so neither has a separate interest therein that can be aliened. Stifel's Union Brewing Co. v. Saxey, 273 Mo. 159, 201 S. W. 67, L. R. A. 1918C, 1009; Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S. W. 72; Lomax v. Cramer, 202 Mo. App. 365, 216 S. W. 575.

"Since there is no showing in the record before us that the estate held by the defendant John E. Taylor

vested before the Married Woman's Act went into effect, we are constrained to hold, under the law as declared in Stifel's Union Brewing Co. v. Saxey and Ashbaugh v. Ashbaugh, supra, that John E. Taylor has no such interest in the premises in question as could be subjected to a mechanic's lien judgment and sold under execution issued thereon."

See also Kurtz v. Field, 223 Mo. App. 270, 14 S. W. (2d) 9; Cochran v. Johnston, 25 S. W. (2d) (Mo. App.) 130.

Applying the above cited authorities and the principles they announce to the case at bar, we find that when Hutton and wife conveyed the property in question to Ernest Peters and Miriam Peters, his wife, in September, 1930, an estate by entirety was thereby vested therein in the two last mentioned persons. Dona testified that he put in the sidewalks to the house under Mrs. Peters' direction and that she came to the lot where the work was being done many times. She and her husband moved into the house erected upon the lot on December 31, 1930. At the time he served Mr. Peters, on February 4, 1931, with notice of his intention to file a lien, and at the time he filed his lien statement, on February 20, 1931, Dona must have known that Mrs. Peters was an owner of the property within the definition of that term given by Section 66-523, supra. Yet he never served her with notice or named her in the lien statement, as the law directs. (Sec. 66-521 and Sec. 66-508, W. R. S. 1931.)

Additionally, on March 31, 1931, the Hutton deed to Ernest Peters and Miriam Peters, his wife, was placed of record in the office of the County Clerk of Sweetwater County, charging Dona with notice of the exact status of the ownership of the property. This was more than a month before Dona filed his cross-petition to foreclose his asserted lien and more than four months before the time expired for bringing suit to prevent

his lien from lapsing. Yet he never made Mrs. Peters a party for more than three years after his lien statement was filed. Clearly, under the authorities reviewed above, if he ever obtained a lien upon her property it did not "continue to exist," to use the statutory language, after six months from February 20, 1931, as she was never sued within that period. This left her husband as the only owner of the property in the case, but, as we have seen, his interest alone in an estate by entirety could not be made subject to the lien foreclosed and taken on execution. To do so would be to take his wife's property without her being brought into the litigation, as the law requires. In other words, the court was without jurisdiction to foreclose the mechanic's lien in this case. From what has been above recited in the resume of the pleadings in the case, it is evident Mrs. Peters objected, and properly so, to being made a party to the foreclosure suit long after it was too late to make her one. Her objections should have been sustained. Ordinarily it may be noted, too, a personal judgment is not rendered in favor of a sub-contractor against an owner in a mechanic's lien foreclosure suit. Upon the authority of an elaborate list of cases, 40 C. J. 498, says: "But a sub-contractor, materialman, or workman between whom and the owner there is no privity of contract and in whose favor no direct liability has been imposed upon the owner is not entitled to a personal judgment against the owner."

We conclude then that the judgment appealed from must be reversed and the cause remanded, with instructions to dismiss the lien claimant's amended cross-petition to foreclose his asserted lien upon the premises involved, and for such other proceedings as are not inconsistent with the conclusions indicated herein.

*Reversed with instructions.*

KIMBALL, CH. J., and BLUME, J., concur.